574 So.2d 108 (1991)
Johnny L. ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 74113.
Supreme Court of Florida.
January 15, 1991.
Rehearing Denied February 27, 1991.
*109 James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
BARKETT, Justice.
Johnny L. Robinson appeals the reimposition of the death sentence.[1] Robinson was convicted of first-degree murder, kidnapping, armed robbery, and sexual battery. This Court affirmed the convictions and vacated the original sentence of death. Robinson v. State, 520 So.2d 1 (Fla. 1988). Upon resentencing, the jury returned an advisory verdict, recommending death by a vote of eight to four. The trial court found six aggravating circumstances[2] and three nonstatutory mitigating circumstances,[3] and again imposed the death penalty. We affirm.
The resentencing jury heard evidence showing that Beverly St. George left her Plant City home, bound for Quantico, Virginia, on the morning of August 11, 1985. Her car broke down enroute. Police discovered *110 her partially clothed body the next morning in a cemetery located in St. Johns County, with two gunshot wounds to her head. Robinson and Clinton Bernard Fields, seventeen, were arrested for the murder.
Robinson gave a statement to the police explaining that he and Fields came upon St. George's car while traveling to Orlando on I-95 and pulled over to render aid. She accompanied them to the cemetery, where Robinson alleged she engaged in consensual sexual activity on the hood of his car. Robinson claimed that the gun, which he had removed from his belt and placed on the hood, went off accidently, shooting her in the face. Robinson then shot her again, stating: "How do you tell someone I accidently shot a white woman?"
Fields testified against Robinson at the guilt phase of the first proceedings and completely contradicted Robinson's version of the crimes. He refused to testify at the resentencing hearing and the court allowed his redacted testimony to be read to the jury. That testimony indicated that Robinson pulled in behind St. George's parked car and ordered her into his car at gunpoint, where he handcuffed her. He drove to the cemetery, where he sexually assaulted her on the hood of his car. He then ordered Fields to do the same, and Fields complied. Afterward, Robinson expressed concern that she could identify them. He then walked up to her and put the gun to her cheek. Fields heard a shot, saw St. George fall, and watched Robinson stand over her and fire a second shot.
The state played a video tape of the crime scene and described the evidence recovered there, including a .22-caliber long rifle shell casing and a black purse strap.
The defense presented the testimony of Dr. Harry Krop, a clinical psychologist. Dr. Krop found significance in Robinson's background and upbringing. He testified that Robinson's childhood was marked by constant physical abuse. He was subjected to beatings with a leather belt, with a switch while his hands were tied, and to beatings while forced to squat with a broom handle between his legs for indefinite periods. Robinson also was sexually abused at the age of seven by his uncle, by the fifteen-year-old wife of his grandfather, and at migrant labor camps between the ages of twelve and fourteen.
Dr. Krop testified that Robinson's background produced an antisocial personality disorder and a psychosexual disorder. He indicated that both disorders were treatable. The doctor testified that he believed seven nonstatutory mitigating circumstances existed, including Robinson's use of alcohol on the night of the offenses.
Robinson lists fourteen errors that he argues mandate reversal. First, Robinson contends that the trial court erred in refusing to give the following instruction on accomplices:
You should use great caution in relying on the testimony of a witness who claims to have helped the defendant commit a crime. This is particularly true when there is no other evidence tending to agree with what the witness says about the defendant.
Fla.Std.Jury Instr. (Crim.) 2.04(b).
This instruction generally is given in the guilt phase of the trial. Robinson claims that this instruction was relevant to a critical element of one theory of the penalty phase defense  that Robinson was no more culpable than Fields and that Robinson should receive no greater punishment than the life sentence received by Fields. The state argues that by finding Robinson guilty, the original jury implicitly determined that Fields's version of the events was credible. Therefore, the instruction was inapplicable because Robinson's greater culpability had already been established.
We agree that the defendant is entitled to an instruction on a theory of defense if there is evidence to support it. Bryant v. State, 412 So.2d 347 (Fla. 1982). In this case, however, the relative culpability of Fields and Robinson was never an issue. No evidence was presented suggesting that Fields's culpability was equal to, much less greater than, Robinson's. Although defense counsel is certainly free to present evidence and argue the relative *111 culpability of all perpetrators in the penalty phase and is entitled to appropriate instructions thereon, we find no evidence under these facts that warranted the instruction for this purpose. Certainly, the safer course of conduct, whenever an accomplice testifies, is to give the instruction. However, we do not find an abuse of discretion in these circumstances.
Likewise we find no merit in Robinson's next argument, that the trial court erred in refusing to instruct the jury on specific nonstatutory mitigating circumstances. Robinson suggests that the "catch-all" instruction, which explains to the jury that they may consider any aspect of the defendant's character or record and any other circumstances of the offense,[4] denigrates the importance of the nonstatutory mitigating circumstances. We do not agree that the instruction requires or encourages jurors to consider everything within these categories as a single factor, thereby distorting the weighing process. Jackson v. State, 530 So.2d 269, 273 (Fla. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989). The instruction is not ambiguous, and we find no reasonable likelihood that the jurors understood the instruction to prevent them from considering and weighing any "constitutionally relevant evidence." Boyde v. California, ___ U.S. ___, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).
We also reject Robinson's next claim that he should have been permitted to establish his intoxication at the time of the crime solely through the testimony of Dr. Krop. Dr. Krop would have testified that Robinson told him that he had been intoxicated during the incident. As an expert witness who examines and tests a patient or a subject, Dr. Krop obviously could testify to what Robinson told him as a factor contributing to his diagnosis and opinion. § 90.704, Fla. Stat. (1983). However, Robinson's hearsay statement to the doctor during a medical interview, in the absence of any evidence of impairment at trial, is insufficient to establish the existence of this mitigating circumstance. Holsworth v. State, 522 So.2d 348, 352 (Fla. 1988); Johnson v. State, 478 So.2d 885, 886-87 (Fla. 3d DCA 1985), dismissed, 488 So.2d 830 (Fla. 1986).
We reject Robinson's argument that a mistrial should have been granted because the venire may have known that Robinson was being resentenced. This claim is based upon a sign posted in the courthouse directing Robinson's jury to the proper courtroom. The sign described the proceeding as a "Criminal re-sentencing hearing." Counsel moved for a mistrial, arguing that the sign implied that Robinson previously had been sentenced to death and thus violated his right to due process and a fair trial. Robinson acknowledges that Jennings v. State, 512 So.2d 169 (Fla. 1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988), controls, but urges reconsideration of Jennings. We decline. As in Jennings, there is absolutely no indication in this record that the jurors knew anything about what transpired in the previous trial.
Robinson next argues that the death sentence is not justified. He contends that three of the six aggravating circumstances are invalid,[5] that additional mitigating circumstances should have been found, and that all of the mitigating circumstances outweigh the remaining valid aggravating circumstances.
As the state points out, the prior jury, in finding Robinson guilty of premeditated murder, accepted Fields's version of the events. That version indicates that St. George was abducted at gunpoint, handcuffed, transported to a remote, desolate cemetery, and sexually abused by both Robinson and Fields. After the sexual batteries, Robinson expressly told Fields that he would have to kill St. George because she could identify him and his car. He then shot her twice.
However, we note that the medical examiner testified that St. George was rendered *112 unconscious immediately after the first bullet struck her head and that death occurred within several seconds. Ordinarily, an instantaneous or near-instantaneous death by gunfire does not satisfy the aggravating circumstance of heinous, atrocious, or cruel. Brown v. State, 526 So.2d 903, 907 (Fla.), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988). As in Brown, the fatal shot to St. George was not accompanied by additional acts setting it apart from the norm of capital felonies, and there was no evidence that it was committed "to cause the victim unnecessary and prolonged suffering." Id. See also Cochran v. State, 547 So.2d 928, 931 (Fla. 1989) (death resulted from single gunshot following abduction at gunpoint); Scull v. State, 533 So.2d 1137, 1142 (Fla. 1988) (victim died from a single blow to the head), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989); Jackson v. State, 502 So.2d 409, 411-12 (Fla. 1986) (robbery victim died shortly after single fatal shot), cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987); Fleming v. State, 374 So.2d 954, 958-59 (Fla. 1979) (single shot fired when hostage grabbed defendant's gun).
Moreover, there was no evidence that St. George labored under the apprehension that she was to be murdered. To the contrary, Fields assured her on several occasions that they did not intend to kill her and planned to release her. Under the totality of the circumstances, we find that the trial court erred in finding that this murder was heinous, atrocious, or cruel. However, we find no error in the trial court's finding that the murder was cold, calculated, and premeditated, and committed to avoid arrest.
Robinson also argues that although the trial judge found three nonstatutory mitigating circumstances, additional mitigating circumstances should have been enumerated. We find no error. The trial court's comprehensive order discusses all of the mitigating evidence presented and clearly reflects that it considered and weighed it against the aggravating circumstances that it found applicable. Although we have disallowed one aggravating circumstance, we are not persuaded that the outcome would be any different in light of the specific aggravating circumstances remaining  murder committed by a person under sentence of imprisonment; murder committed by person previously convicted of a violent felony; murder committed in the course of sexual battery and kidnapping; murder committed to avoid arrest; and murder committed in a cold, calculated, and premeditated manner.
The final point that warrants discussion is Robinson's claim that imposing the death sentence upon resentencing violates the constitutional prohibition against double jeopardy. Federal and state constitutions bar successive prosecutions for the same offense. U.S. Const. amend. V; art. I, § 9, Fla. Const. However, double jeopardy is generally no bar to reprosecution where a mistrial is granted following defense motion. Fuente v. State, 549 So.2d 652, 657-58 (Fla. 1989). In Oregon v. Kennedy, 456 U.S. 667, 669, 102 S.Ct. 2083, 2086, 72 L.Ed.2d 416 (1982), the Court made an exception to the general principle whenever the state deliberately provokes the defendant into moving for a mistrial.
In reversing the original sentence, we said that the prosecutor's examination of the defense's medical expert "was a deliberate attempt to insinuate that appellant had a habit of preying on white women and thus constituted an impermissible appeal to bias and prejudice." Robinson, 520 So.2d at 6. Based upon this language, Robinson now argues that Kennedy mandates reversal. Clearly, not all prosecutorial misconduct that mandates reversal is intended to provoke the defendant into moving for a mistrial. Although we found that the prosecutor's statement in this case amounted to overreaching and resulted in reversible error, we did not and do not perceive the prosecutor's comment to have been a deliberate attempt to provoke a mistrial. There is nothing in the record to indicate that the prosecutor wanted a mistrial or that a mistrial would have benefited the state in any way. This record does not support Robinson's claim of a double jeopardy violation. See Rutherford v. State, 545 So.2d 853, 855 (Fla.) (this Court's review of the record in the first case showed that the prosecutor's *113 motive was to introduce evidence intended to convict the defendant, not to create error that would force a new trial), cert. denied, ___ U.S. ___, 110 S.Ct. 353, 107 L.Ed.2d 341 (1989); Keen v. State, 504 So.2d 396, 402 n. 5 (Fla. 1987) ("In our view, the misconduct sub judice was engaged in by the prosecutor in the heat of trial in order to win his case, and was not done intentionally to afford the state `a more favorable opportunity to convict the defendant.'" (Citation omitted.)).
This Court previously has ruled adversely to Robinson's additional claims that call into doubt the propriety of the standard jury instructions;[6] that the trial court improperly rejected Robinson's requests for additional jury instructions;[7] that the jury was misadvised in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), see Grossman v. State, 525 So.2d 833, 839 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); that this Court's death penalty review results in arbitrary and capricious imposition of the death penalty, see Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); that the capital-sentencing statute is unconstitutional facially and as applied, see Proffitt; Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985); and that jury instructions improperly doubled two aggravating circumstances  murder committed by person under sentence of imprisonment and previous conviction of a violent felony. See Waterhouse v. State, 429 So.2d 301, 306-07 (Fla. 1983), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983).
Finally, we reject as meritless Robinson's contentions that his own statement to the police officers should have been edited. In giving his version of the events, Robinson told police investigators that he had to shoot St. George a second time, and explained: "How do you tell someone I accidentally shot a white woman." Robinson now suggests that the word "white" should have been excluded to avoid the risk of racial prejudice. We find no error.
For all the foregoing reasons, we affirm the imposition of the death sentence.
It is so ordered.
SHAW, C.J., and OVERTON, GRIMES and KOGAN, JJ., and EHRLICH, Senior Justice, concur.
McDONALD, J., concurs in result only.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
[2] Murder committed by person under sentence of imprisonment, section 921.141(5)(a), Florida Statutes (1983); previous conviction of a violent felony, section 921.141(5)(b), Florida Statutes (1983); murder committed in course of sexual battery and kidnapping, section 921.141(5)(d), Florida Statutes (1983); murder committed to avoid arrest, section 921.141(5)(e), Florida Statutes (1983); murder especially heinous, atrocious, or cruel, section 921.141(5)(h), Florida Statutes (1983); and murder committed in cold, calculated, and premeditated manner, section 921.141(5)(i), Florida Statutes (1983).
[3] The court accepted as true that Robinson had a difficult childhood and found as a separate mitigating circumstance that Robinson suffered physical and sexual abuse during childhood. The court also accepted the opinion of Dr. Harry Krop that Robinson has a psychosexual disorder.
[4] Fla.Std.Jury Instr. (Crim.) 81.
[5] That the murder was especially heinous, atrocious, or cruel; committed in a cruel, cold, and premeditated manner; and for the purpose of avoiding arrest.
[6] Robinson claims that the instructions improperly instruct the jury that the mitigating circumstances must outweigh the aggravating circumstances to make appropriate a life recommendation, see Arango v. State, 411 So.2d 172, 174 (Fla.) (rejecting claim that the instructions impermissibly allocated the burden of proof in violation of due process and concluding that the standard jury instructions, taken as a whole, show no reversible error), cert. denied, 457 U.S. 1140, 102 S.Ct. 2973, 73 L.Ed.2d 1360 (1982); and that the instructions on the aggravating circumstances of heinous, atrocious, or cruel, and cold, calculated, and premeditated are unconstitutionally vague under Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Brown v. State, 565 So.2d 304, 308 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990); Smith v. Dugger, 565 So.2d 1293, 1295 n. 3 (Fla. 1990); Smalley v. State, 546 So.2d 720, 722 (Fla. 1989).
[7] Robinson claims that he was entitled to instructions: to eliminate an asserted unconstitutional shifting of the burden of proof, Preston v. State, 531 So.2d 154, 160 (Fla. 1988); Arango v. State, 411 So.2d 172, 174 (Fla.), cert. denied, 457 U.S. 1140, 102 S.Ct. 2973, 73 L.Ed.2d 1360 (1982); to consider as a single aspect any aspect of an aggravating circumstance that gives rise to two circumstances, see Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986); to limit the jury's consideration of aggravating circumstances to those listed by the trial court, cf. Bertolotti v. State, 476 So.2d 130, 132 (Fla. 1985) (the proposed instruction is subsumed in the standard jury instruction); to presume Robinson innocent of each aggravating circumstance until the presumption was overcome by proof beyond a reasonable doubt, id.; and to remind the jury that its recommendation must be the product of "reasoned judgment." Jackson v. Wainwright, 421 So.2d 1385, 1388-89 (Fla. 1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983).