773 So.2d 1 (2000)
Johnny L. ROBINSON, Petitioner,
v.
Michael W. MOORE, etc., Respondent.
No. SC95336.
Supreme Court of Florida.
August 31, 2000.
Rehearing Denied December 8, 2000.
*2 John W. Moser, Capital Collateral Regional Counsel, and James H. Walsh, Chief Assistant CCRC, Capital Collateral Regional CounselMiddle Region, Tampa, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, Florida, for Respondent.
PER CURIAM.
Johnny L. Robinson, a state prisoner under sentence of death, petitions this Court for a writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(9), Fla. Const. For the reasons stated below, we deny the petition for habeas relief, finding no merit in petitioner's claims that his conviction and sentence were illegally obtained.

PROCEDURAL BACKGROUND[1]
Robinson was indicted for first-degree murder, kidnapping, armed robbery, and sexual battery. Robinson pled not guilty and was tried and found guilty of all the charges. The jury recommended a sentence of death by a nine-to-three vote. Upon finding seven aggravating circumstances, the trial court sentenced Robinson to death.
We affirmed Robinson's conviction on direct appeal, but vacated his sentences. See Robinson v. State, 520 So.2d 1, 5 (Fla. 1988). The noncapital sentences were vacated because of an improper guideline departure. The death sentence was remanded for a new penalty phase because the State impermissibly argued a nonstatutory aggravating factor, and because the State improperly raised an issue of racial bias at the penalty phase of the trial. See id.
In the new penalty phase, the jury recommended a death sentence by a vote of eight to four. The trial court, upon finding six aggravating circumstances, sentenced Robinson to death on the capital offense and imposed concurrent life sentences on the noncapital offenses. We affirmed the sentences. See Robinson v. State, 574 So.2d 108 (Fla.1991), cert. denied, 502 U.S. *3 841, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991). The facts as described in our review reflect:
The resentencing jury heard evidence showing that Beverly St. George left her Plant City home, bound for Quantico, Virginia, on the morning of August 11, 1985. Her car broke down enroute. Police discovered her partially clothed body the next morning in a cemetery located in St. Johns County, with two gunshot wounds to her head. Robinson and Clinton Bernard Fields, seventeen, were arrested for the murder.
Robinson gave a statement to the police explaining that he and Fields came upon St. George's car while traveling to Orlando on I-95 and pulled over to render aid. She accompanied them to the cemetery, where Robinson alleged she engaged in consensual sexual activity on the hood of his car. Robinson claimed that the gun, which he had removed from his belt and placed on the hood, went off accidently, shooting her in the face. Robinson then shot her again, stating: "How do you tell someone I accidently shot a white woman?"
Fields testified against Robinson at the guilt phase of the first proceedings and completely contradicted Robinson's version of the crimes. He refused to testify at the resentencing hearing and the court allowed his redacted testimony to be read to the jury. That testimony indicated that Robinson pulled in behind St. George's parked car and ordered her into his car at gunpoint, where he handcuffed her. He drove to the cemetery, where he sexually assaulted her on the hood of his car. He then ordered Fields to do the same, and Fields complied. Afterward, Robinson expressed concern that she could identify them. He then walked up to her and put the gun to her cheek. Fields heard a shot, saw St. George fall, and watched Robinson stand over her and fire a second shot.
The State played a video tape of the crime scene and described the evidence recovered there, including a .22-caliber long rifle shell casing and a black purse strap.
The defense presented the testimony of Dr. Harry Krop, a clinical psychologist. Dr. Krop found significance in Robinson's background and upbringing. He testified that Robinson's childhood was marked by constant physical abuse. He was subjected to beatings with a leather belt, with a switch while his hands were tied, and to beatings while forced to squat with a broom handle between his legs for indefinite periods. Robinson also was sexually abused at the age of seven by his uncle, by the fifteen-year-old wife of his grandfather, and at migrant labor camps between the ages of twelve and fourteen.
Dr. Krop testified that Robinson's background produced an antisocial personality disorder and a psychosexual disorder. He indicated that both disorders were treatable. The doctor testified that he believed seven nonstatutory mitigating circumstances existed, including Robinson's use of alcohol on the night of the offenses.
Robinson, 574 So.2d at 109-10.
Robinson subsequently filed a rule 3.850 motion for postconviction relief and we affirmed the trial court's denial of his rule 3.850 motion. See Robinson v. State, 707 So.2d 688 (Fla.1998). He now files this habeas corpus petition, challenging the legality of his conviction and death sentence.
In his petition, Robinson contends: (1) that appellate counsel's failure to raise on direct appeal the impropriety of the State's injection of racial prejudice constitutes ineffective assistance of counsel; (2) that appellate counsel was ineffective for not raising on direct appeal that race discrimination permeates the justice system in St. Johns County to the extent of preventing Robinson, a black defendant, from getting a fair trial and sentence; (3) that appellate counsel was ineffective for not raising on direct appeal the State's violation of Brady *4 /Giglio;[2] (4) that the prosecutor's improper closing argument at the penalty phase rendered the death sentence unreliable and appellate counsel was ineffective for not raising this claim on direct appeal; (5) that the trial court's and the prosecutor's assertion that sympathy and mercy were improper considerations for the jury deprived Robinson of a reliable and individualized sentencing determination; and (6) that the jury weighed invalid and unconstitutionally vague aggravating circumstances.[3]

ANALYSIS
We first address Robinson's claims as to the ineffective assistance of appellate counsel. In ascertaining the merit of a habeas petition based on a challenge of ineffective assistance of appellate counsel, it is appropriate to determine:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) (quoting Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988)). Under this analysis, appellate counsel will not be deemed ineffective for failing to raise issues not preserved for appeal. See Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991).
However, an exception may be made where appellate counsel fails to raise a claim which, although not preserved at trial, presents a fundamental error. See Roberts v. State, 568 So.2d 1255, 1261 (Fla. 1990). A fundamental error is defined as an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1997) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
Robinson asserts that the following colloquy between the State and its witness demonstrates fundamental error in that the prosecutor deliberately injected racial prejudice in the trial:
[State]: Now are you sure that Mr. Robinson used those exact words about shooting the `white bitch'?
[witness]: Yes, yes.
No objection was raised by Robinson's trial counsel to this colloquy. However, Robinson now claims that even without an objection this brief exchange rendered the entire proceedings fundamentally unfair. We disagree.
Initially, we observe that while it was the prosecutor who asked the question, it was actually the witness who asserted that the word "white" was used by the defendant. This was the factual testimony of the witness as to what was said by the defendant. Further, this was not the only time that the victim was referred to as "white" without objection. As noted in the statement of the facts, Robinson himself was directly quoted as being concerned that he had assaulted a white woman. In addition, it does not appear that this testimony played a critical role in the State's case against Robinson. To the contrary, the record reflects that the evidence of guilt, which included a confession by Robinson and the testimony of an eyewitness to the murder, was overwhelming. Hence, we conclude that the mere use of this wording in a question by the prosecution does not rise to the level of fundamental error. See Kilgore, 688 So.2d at 898. Accordingly, *5 consistent with the standard enunciated in Teffeteller, we conclude appellate counsel's decision not to raise this issue as a fundamental error fell within the bounds of professionally acceptable performance and does not "undermine confidence in the correctness of the result." 734 So.2d at 1027. We therefore find this claim without merit.
Robinson next asserts that appellate counsel rendered ineffective assistance when he failed to argue on appeal that race discrimination so permeates the justice system in St. Johns County that Robinson, a black defendant, could not get a fair trial and sentence. We note that specific issues relating to the racial makeup of the grand jury, the venire, and resentencing jury were addressed in the postconviction proceedings and the appeal of the denial of Robinson's rule 3.850 motion and those claims were denied on the merits. See Robinson, 707 So.2d at 698. However, the separate claim of racial discrimination in the seeking and imposition of the death penalty is apparently being raised for the first time through this ineffective assistance of appellate counsel claim.
While we may sometimes be reluctant to invoke a procedural bar to colorable claims, we have no such reluctance here. This claim was clearly not properly preserved for appellate purposes by making a proper record or objection in the trial court. Without such record or objection, it is virtually impossible for an appellate counsel to even know of the occurrence of any irregularities at trial. As such, he cannot be deemed ineffective for not raising an issue that was not properly preserved as in the current case.
Even if preserved, however, it is obvious that Robinson's claim would fail. Following the federal standard in analyzing a claim of racial discrimination in the prosecutor's decision to seek the death penalty, we have held that the claimant, in order to prevail, "must prove that the decision-makers in his case acted with discriminatory purpose." Foster v. State, 614 So.2d 455, 463 (Fla.1992) (quoting McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)). Further, an inference of abuse of prosecutorial discretion requires "exceptionally clear proof" of discrimination. Id.; see also Jordan v. State, 694 So.2d 708, 711 (Fla.1997). We conclude that Robinson does not meet Foster's difficult standard,[4] and appellate *6 counsel has not been shown to have been ineffective for not raising this claim. See Suarez v. Dugger, 527 So.2d 190, 193 (Fla. 1988).
Robinson next asserts that appellate counsel was ineffective for not raising as an issue the State's failure to disclose prior inconsistent statements of Clinton Fields, the eyewitness to the crime. As acknowledged by Robinson, in our affirmance of the trial court's denial of his rule 3.850 motion, we stated that this issue appeared to be procedurally barred. See Robinson, 707 So.2d at 693. Nevertheless, we fully addressed this claim and found it to be without merit. See id. at 693-95. Accordingly, we find appellate counsel was not ineffective for not raising a claim which this Court has subsequently reviewed and found to be meritless. See Suarez, 527 So.2d at 193.
Robinson next asserts that appellate counsel was ineffective for not raising an issue of the prosecutor's allegedly improper closing arguments at the penalty phase. Once again, we observe that this claim was not properly preserved at trial so that appellate counsel could raise it on appeal. In addition, we have rejected a similar claim asserting ineffective assistance of trial counsel as procedurally barred in Robinson's appeal of his rule 3.850 motion, although the merit of the underlying claim was not addressed. See Robinson, 707 So.2d at 698. Further, we conclude that Robinson cannot prevail on the merits.
In the first part of this claim, Robinson asserts that the State misstated the exchange between the victim and the two codefendants. Upon examination, we find the prosecutor's remarks as to what the victims said did not materially depart from what the witness actually testified to or were proper inferences from the witness's testimony. At most, the prosecutor's remarks would have constituted harmless error. See James, 695 So.2d at 1234 ("[W]e conclude that the prosecutor's poorly phrased comment was a harmless error as there is no possibility that it contributed to the outcome in this case.").
Robinson also claims that the prosecutor made an impermissible distinction between statutory and nonstatutory mitigating factors. Again, we have examined the statements and conclude that, at most, the State appears to have merely emphasized the number of aggravating factors. In addition, it was accurate on this record for the State to claim there were no statutory mitigators, and the fact that the prosecutor pointed that out did not necessarily imply that the statutory factors should have been weighed more heavily than the nonstatutory ones. Furthermore, this would at worst constitute harmless error. See James, 695 So.2d at 1234.
Robinson also argues that the prosecutor argued for a nonstatutory aggravating circumstance by stating the following:
[State]: She paid the ultimate penalty with her life. She didn't do anything wrong, I would suggest to you. She did everything by the textbook. Went along with the whole ball of wax, submitted herself to the ultimate humiliation. For *7 what? To be given the ultimate punishment.
[State]: I would suggest Mr. Robinson, as a result of this, deserves the ultimate punishment and nothing less....
While these comments by the State were improper, they still do not rise to the level of fundamental error that would require reasonable appellate counsel to assert error on appeal or that would require a new sentencing hearing. See James, 695 So.2d at 1234; Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985) (finding that although prosecutor's comments exceeded proper bounds of argument, misconduct was not so outrageous as to taint validity of jury's recommendation).
Therefore, we find appellate counsel was not ineffective for failing to raise any of the above claims relating to the prosecutor's comments because they were not objected to and at worst constitute harmless error. See Suarez, 527 So.2d at 193.
Last, Robinson asserts that he was deprived of an individualized sentencing determination because of the trial court's and the prosecutor's comments discouraging reliance on sympathy, anger, bias or prejudice by the jury. These claims could have been raised on appeal and are not properly raised here. Similarly, Robinson asserts that the jury improperly weighed several statutory aggravating circumstances because they are invalid and unconstitutionally vague. Again, however, we conclude these claims should have been properly raised in prior proceedings and are not properly raised in this habeas petition.[5]
Accordingly, for the reasons expressed above, we deny Robinson's petition for habeas corpus relief.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., concurs in result only.
NOTES
[1] We deny the [State's] Motion to Dispense With Oral Argument as moot since Robinson never sought oral argument. We also deny the State's Motion to Dismiss on Procedural Bar wherein the State argues that Robinson failed to file his habeas writ simultaneously with his rule 3.850 motion, in violation of Florida Rule of Criminal Procedure 3.851(b)(2). Rule 3.851(b)(2) requires that all petitions for extraordinary relief be filed simultaneously with the initial brief in the appeal of the circuit court's denial of the death-sentenced prisoner's rule 3.850 motion. However, this restriction applies to death-sentenced individuals whose convictions and sentences became final after January 1, 1994. See Fla. R.Crim. P. 3.851(b)(6). Robinson's conviction and sentence became final when the United States Supreme Court denied certiorari on the appeal of his second direct appeal in October 1991. See Robinson v. State, 574 So.2d 108 (Fla.1991), cert. denied, Robinson v. Florida, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991). Robinson's petition is therefore properly before this Court.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
[3] Issue 6 contains numerous subissues which we address in the order presented by Robinson.
[4] Robinson now submits statistical data allegedly showing a disparity in the imposition of the death penalty in St. Johns County. Specifically, between 1976 and 1987, fifty-nine homicides were committed in St. Johns. Thirty-three of the victims were white; twenty-five were black; and the race of one victim was unknown. Thus, forty-two percent of the homicide victims were black. In this same period, three death sentences were imposed in homicide cases. None of these death sentences was imposed in a case where the victim was black. Robinson further submits that more recently compiled data from the entire Seventh Judicial Circuit also show that the odds of a death sentence are much higher in cases in which a black is accused of killing a white than in other homicide cases.

Similar arguments were unsuccessfully raised and rejected in Foster. Foster submitted a study conducted by his counsel which, he argued, showed that Bay County defendants were four times more likely to be charged with first-degree murder where the victims were white. See Foster, 614 So.2d at 463. Of the first-degree-murder defendants, white-victim defendants were six times more likely to go to trial, and this group was twenty-six times more likely to be convicted of first-degree murder. We concluded that despite the statistical data, Foster failed to show that the prosecutor acted with purposeful discrimination. See id.
Robinson's prosecutor was actually deposed and stated that his decision to seek the death penalty was based mainly on Robinson's prior record. Specifically, he said:
[State]: I think as a prosecutor when I see a guy who has a record like Robinson had, who had just been released recently, had raped somebody else up in Virginia, ... he had ... four prior rape convictions, if my memory serves me correctly, three or four, and he was on parole for it in Maryland, I think the guy deserves the death penalty. I mean, here he had just raped some girl in Virginia and then a week or two weeks later he rapes this girl in St. Augustine and kills her....
Record on Appeal (Robinson, 707 So.2d at 688) at 920-21.
Additionally, this particular prosecutor stated that he had sought the death penalty in only two cases throughout his service at the state attorney's office. Of the two cases, one defendant was black, the other white, though the race of the victims was not mentioned. Hence, in the instant case, variables other than race might explain the prosecutor's decision to seek the death penalty. On these facts, Robinson does not meet the high standard of showing "exceptionally clear proof" of discrimination on the part of this prosecutor. See Foster, 614 So.2d at 463; Jordan, 694 So.2d at 711.
Finally, it should be noted that there were many blacks in the venire. The prosecutor stated that he was in fact disappointed when defense counsel, as directed by Robinson, struck every potential black juror. See Record on Appeal at 938-940. In light of such a course of action by Robinson during jury selection, he cannot now maintain the current claim with regard to the imposition of the death sentence.
[5] As to Robinson's claims relating to HAC, this Court has already ruled in favor of Robinson on direct appeal in finding that the trial court erred in finding the existence of the HAC aggravator. See Robinson, 574 So.2d at 112. The Court went on to hold that although HAC was disallowed, the trial court's finding was harmless in light of the weight and validity of the remaining five aggravating factors. See id.