865 So.2d 1259 (2004)
Johnny ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
Johnny Robinson, Petitioner,
v.
James V. Crosby, Jr., Secretary, Florida Department of Corrections, Respondent.
Nos. SC04-46, SC04-64.
Supreme Court of Florida.
January 29, 2004.
*1260 John W. Jennings, Capital Collateral Regional CounselMiddle Region, Peter J. Cannon, Assistant Capital Collateral Counsel, and Daphney Gaylord, Assistant Capital Collateral Counsel, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Kenneth S. Nunnelley and Barbara C. Davis, Assistant Attorneys General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Johnny Robinson, a prisoner under the sentence of death and an active death warrant, appeals an order of the circuit court *1261 denying a successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. Robinson has also filed a successive petition for writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. These cases have been consolidated. We affirm the trial court's denial of postconviction relief, and we deny habeas relief.

BACKGROUND
The facts of this case are set forth in our opinions on direct appeal, wherein we affirmed Robinson's first-degree murder conviction and, after resentencing, affirmed his death sentence. See Robinson v. State, 574 So.2d 108, 110 (Fla.), cert. denied, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991); Robinson v. State, 520 So.2d 1 (Fla.1988). In 1993, Robinson filed his initial rule 3.851 motion in circuit court. Robinson v. State, 707 So.2d 688, 690 (Fla.1998). The trial court summarily denied several claims and held an evidentiary hearing on the remaining claims. Id. The trial court denied Robinson relief on all claims. Id. On appeal from the trial court's order, this Court affirmed the trial court's denial of relief on all claims. Id. at 690-700.
Robinson filed a state petition for habeas corpus, which this Court denied on August 31, 2000. Robinson v. Moore, 773 So.2d 1, 7 (Fla.2000), receded from by Mann v. Moore, 794 So.2d 595, 598 (Fla. 2001) (receding from Robinson (specifically footnote 1) and holding that "the simultaneous filing requirement in rule 9.140(b)(6)(E) and 3.851(b)(2) does apply to defendants whose convictions and sentences were finalized prior to January 1, 1994, notwithstanding the provision of rule 3.851(b)(6)").
Thereafter, Robinson sought federal habeas relief in the United States District Court for the Middle District of Florida, which was denied.[1] The Eleventh Circuit Court of Appeals issued an opinion affirming the district court's denial of Robinson's petition for a writ of habeas corpus. Robinson v. Moore, 300 F.3d 1320 (11th Cir. 2002).

DEATH WARRANT PROCEEDINGS
On December 18, 2003, Governor Jeb Bush signed Robinson's first death warrant. Robinson's execution is presently set for February 4, 2004, at 6:00 p.m. In response to the signing of the death warrant, Robinson filed his second rule 3.851 motion, entitled "Successor Motion to Vacate Judgment and Sentence, and Request for Evidentiary Hearing and Stay of Execution," (hereinafter "Successor Motion"). On January 16, 17, and 19, 2004, the trial court held an evidentiary hearing. On January 19, 2004, Robinson filed a motion seeking the release of evidence for DNA testing in a motion entitled "Defendant's Motion to Release Evidence for DNA Testing" (hereinafter "DNA Motion"). On January 19, 2004, the trial court entered its order on the Successor Motion, entitled "Order on Successor Motion to Vacate Judgment and Sentence, Request for Evidentiary Hearing and Stay of Execution" (hereinafter "Order Denying Successor Motion"), which denied all of the claims alleged in the Successor Motion. On the same day, the circuit court denied the DNA Motion in an order entitled "Order on Motion to Release Evidence on DNA Testing."

SUCCESSIVE RULE 3.851 MOTION

Recantation Testimony
Robinson first argued that the newly discovered evidence of codefendant Clinton *1262 Fields's recantation establishes that Robinson is not guilty of first-degree murder. The State asserts that this claim is procedurally barred because it was argued by Robinson in his initial rule 3.851 motion. See Robinson v. State, 707 So.2d 688, 690-91 (Fla.1998). When this claim was argued initially, the trial court denied Robinson postconviction relief after Robinson produced an affidavit authored by Fields, in which Fields repudiated his trial testimony. Id. at 691. This Court affirmed the trial court's denial of that claim on the following bases: (1) It is undisputed that Robinson's account of the incident is that he accidentally shot the victim; (2) Fields's recantation in the form of an affidavit amounted to inadmissible hearsay; and (3) no independent corroborating evidence supports Fields's new story. Id. at 690-92. Fields testified at the most recent evidentiary hearing, curing the previous hearsay problem.
Nevertheless, we conclude that Robinson has not demonstrated error in the trial court's analysis and rejection of this claim. In considering a claim based upon newly discovered evidence, this Court explained in Jones v. State, 709 So.2d 512, 521 (Fla. 1998):
Two requirements must be met in order for a conviction to be set aside on the basis of newly discovered evidence. First, in order to be considered newly discovered, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence." Torres-Arboleda v. Dugger, 636 So.2d 1321, 1324-25 (Fla. 1994).
Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. To reach this conclusion the trial court is required to "consider all newly discovered evidence which would be admissible" at trial and then evaluate the "weight of both the newly discovered evidence and the evidence which was introduced at the trial."
Jones v. State, 709 So.2d 512, 521 (Fla. 1998) (citations omitted). Importantly, Robinson has failed to demonstrate error by the trial court on the critical credibility issue that arises with Fields's recantation testimony. The trial court has made a fact-based determination that the recantation is not credible. In light of conflicting evidence we must give deference to that determination. We addressed this concern in our opinion on Robinson's first 3.851 appeal, wherein we stressed that recantation testimony "may be unreliable and trial judges must `examine all of the circumstances in the case.'" Robinson, 707 So.2d at 691 (quoting State v. Spaziano, 692 So.2d 174, 176 (Fla.1997)).[2]
Robinson asserted below that Fields has a diminished mental capacity and that he is susceptible to coercion by law enforcement. We are satisfied that the trial court properly considered Fields's diminished capacity, his hearing testimony, and all of the other relevant circumstances in toto when denying this claim, including the statements and testimony previously given by Fields that conflict with his recantation. At the most recent evidentiary hearing, for example, Fields became easily confused as to the order of events in the case. Notably, Fields testified that at his deposition in this case (which occurred after his own trial and conviction), he was represented by an attorney who was present and who advised him to tell the truth. Thereafter, *1263 Fields's deposition testimony implicated Robinson in the intentional shooting death of the victim. Thus, we affirm the trial court's denial of this claim because the trial court properly considered the entire history and context of Fields's testimony including his capacities and credibility when evaluating the credibility of his recantation. See State v. Spaziano, 692 So.2d 174, 178 (Fla.1997) (finding that the trial judge did not abuse his discretion because he conducted a thorough evidentiary hearing, his decisions were supported by the evidence, and "because the trial judge is there and has a superior vantage point to see and hear the witnesses presenting the conflicting testimony [while] [t]he cold record on appeal does not give appellate judges that type of perspective").
Robinson also argued that the newly discovered evidence of Fields's recantation establishes that the State committed Brady[3] and Giglio[4] violations. Previously, this Court rejected Robinson's same Brady/Giglio claim as being procedurally barred because it should have been raised on direct appeal. Id. Additionally, this Court analyzed the claim on the merits, finding that Robinson could not meet the requirements to support a Brady or Giglio claim. Id. at 693-94 (finding that the evidence was probably not "favorable" to Robinson under Brady, nor were the facts "clear-cut" enough to establish a Giglio violation).[5]
This Court has already ruled against Robinson regarding whether or not the substance of Fields's post-trial version of events, considered in the context of the entire circumstances of the case, establishes a violation of the precepts of Brady or Giglio. Robinson has failed to present any new law or fact in this new round of postconviction proceedings that warrants a reconsideration of our previous opinion. Further, the trial court's ruling on this claim is consistent with its ruling on the recantation claim. Therefore, we affirm the trial court's denial of this claim.

Racial Bias
Robinson also asserted in the Successor Motion that newly discovered evidence establishes that his prosecution and sentencing were impermissibly racially motivated. Specifically, he claims that in St. Johns County there exists a racial disparity in the imposition of the death penalty. To support this claim, Robinson introduced statistical data compiled by Dr. Michael Radelet, a sociology professor who has studied racial bias in the context of the death penalty. First, we note that Robinson previously argued this claim in a habeas petition to this Court, which we denied on the merits in Robinson v. Moore, 773 So.2d 1, 5-6 n. 4 (Fla.2000). Therefore, this claim is procedurally barred. See Owen v. Crosby, 854 So.2d 182, 187 (Fla.2003) (stating that claims that were raised or could have been raised in a prior postconviction motion are procedurally barred unless such claims are based on newly discovered evidence). Second, as the trial court pointed out, although Robinson claims that Dr. Radelet's data has been revised and updated, the statistical evidence presented at the recent hearing was consistent with the statistical evidence presented in this case in 1994. Thus, Dr. Radelet's proffered testimony could not have been properly offered at the recent evidentiary hearing as newly *1264 discovered evidence. See Jones, 709 So.2d at 521.
We also find no error in the trial court's determination that Robinson has still failed to show "exceptionally clear proof" of racial discrimination by the State with respect to this case. See McCleskey v. Kemp, 481 U.S. 279, 319, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (finding that although the defendant made "wide-ranging arguments that basically challenge the validity of capital punishment in our multiracial society," the judicial system is to consider on a case-by-case basis the issue of whether the law was properly applied); Foster v. State, 614 So.2d 455, 463-64 (Fla.1992) (finding that the defendant failed to prove that the prosecutor "acted with purposeful discrimination in seeking the death penalty in his case" and stating that the racial statistical figures presented did not constitute "`exceptionally clear proof' of discrimination"). Therefore, we affirm the trial court's denial of Robinson's claim of racial bias in his prosecution and sentencing.

Impeachment
Robinson also contends that the trial court erred when it ruled that information contained in the investigating officers' personnel files would not have been admissible for impeachment purposes at trial. At the evidentiary hearing, Robinson wanted to admit various unflattering notes that were contained in the investigating officers' personnel files, in support of the fact that these officers were potentially capable of coercing Fields to lie.[6] We find that the trial court ruled correctly when it denied relief in this claim, because Robinson could not show how this character evidence was going to be admitted for anything but propensity. See § 90.404(2)(a), Fla. Stat. (2003) ("Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue ... but it is inadmissible when the evidence is relevant solely to prove bad character or propensity."). Further, none of the prospective evidence from the officers' personnel files appeared to relate to this case and Robinson was unable to show how it was relevant to prove a material fact in this case. See Breedlove v. State, 580 So.2d 605, 609 (Fla. 1991) ("[T]he detectives' criminal activities were collateral to any issues in Breedlove's trial, and questions about them would not have promoted the ends of justice. Such questions would not have been permissible, and, thus, there is no reasonable probability that the outcome of the suppression hearing or the trial would have been different.").

DNA
Robinson also appeals the trial court's denial of his DNA Motion. It was not until these latest postconviction proceedings that Robinson moved to have evidence consisting of cigarette butts, beer cans, the victim's clothing, hair, and the rape kit tested for the presence of DNA. The trial court denied the DNA Motion, finding that such testing is not now probative because Robinson does not dispute his involvement in this case, including the facts that he had sex with the decedent and that he fired the shots that killed her. The trial court concluded, "The results of any DNA test would not in any way exonerate the Defendant, nor mitigate his sentence." Pursuant to Florida Rule of Criminal Procedure 3.853, the defendant must allege with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability *1265 of acquittal or a lesser sentence. See Fla. R.Crim. P. 3.853(b)(1)-(6); Hitchcock v. State, 866 So.2d 23, 2003 WL 23162540 (Fla. Jan. 15, 2004). It is the defendant's burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant's sentence. Id.
However, Robinson failed to state in the motion how DNA testing of all the items listed would exonerate him of or even mitigate his sentences for robbery, sexual battery, and first-degree murder. Notably, Robinson stipulated that he shot the victim twice in the head, but claimed that the first shot was accidental and took place after the two engaged in consensual sex. See Robinson v. Moore, 300 F.3d 1320, 1323-26 (11th Cir.2002). Thus, his identity and physical contact with the decedent are not at issue. See Marsh v. State, 812 So.2d 579, 579 (Fla. 3d DCA 2002) (holding that DNA testing of rape kit would be superfluous because the defendant's unsuccessful defense at trial was consensual sex and not identity). Because Robinson failed to meet his burden under rule 3.853 to allege with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence, we affirm the trial court's denial of relief in this claim.

HABEAS CORPUS
First, we address Robinson's claim that he is entitled to have his death sentence vacated in light of the United States Supreme Court's opinion in Ring v. Arizona, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (finding Arizona's capital sentencing statute to be unconstitutional "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for the imposition of the death penalty"). This Court has consistently rejected similar claims. For example, this Court recently rejected a Ring claim in Rivera v. State, 859 So.2d 495, 508 (Fla.2003), wherein we stated:
Rivera asserts that Florida's capital sentencing scheme violates the United States Constitution under the holding of Ring. This Court addressed similar contentions in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and, while there was no single majority view expressed, we denied relief. We have since rejected numerous similar claims and find that Rivera is likewise not entitled to relief on this claim.
In cases involving two of the aggravating factors found in the case at bar (prior violent felony and that the murder was committed during the course of a sexual battery and kidnapping), this Court has also relied on the existence of those factors when denying Ring claims. This Court has held that the aggravators of murder committed "during the course of a felony" and prior violent felony involve facts that were already submitted to a jury during trial and, hence, are in compliance with Ring. See Owen v. Crosby, 854 So.2d 182, 193 (Fla.2003) (rejecting the defendant's Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claim in light of Ring on the basis of Bottoson, but noting that the "during the course of a felony" and the prior violent felony aggravators "involve[d] circumstances that were submitted to the jury and found to exist beyond a reasonable doubt"); Banks v. State, 842 So.2d 788, 793 (Fla.2003) (denying Ring claim pursuant to Bottoson, but pointing out that the "during the course of *1266 a felony" and the prior violent felony aggravators also justified denying the claim); see also Anderson v. State, 863 So.2d 169 (Fla.2003) (denying Apprendi/Ring claim consistent with similar Florida cases, also because the jury unanimously recommended death and the trial judge found the aggravator of prior violent felony), petition for cert. filed, No. 03-8065, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___ (U.S. Dec. 18, 2003); Rivera v. State, 859 So.2d 495, 508 (Fla.2003) (finding that Rivera was not entitled to relief based on Bottoson, the fact that he had a unanimous jury death recommendation, and the existence of the two aggravators prior violent felony and murder committed "during the course of a felony").
In short, this Court has rejected similar Ring claims and has held that the aggravators of prior violent felony and "murder committed during the course of a felony" are exceptions to a Ring analysis because they involve facts already submitted to and found by a jury. Robinson's Ring claim is without merit because he has not argued law or fact that distinguishes his case from our recent decisions.
Second, we address Robinson's claim that he is entitled to relief because Florida's standard jury instructions in capital cases violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).[7] Specifically, Robinson claims that Florida's standard jury instructions in capital cases do not comply with Caldwell, in light of the Ring opinion, because Ring requires the jury to play a vital role in sentencing and the jury instructions currently diminish that role. Caldwell and Ring involve independent concerns. Ring's focus is on jury findings that render a defendant eligible for the death penalty, while Caldwell's focus as applied in this state is on the jury's role in the decision to recommend a sentence for death-eligible defendants. Therefore, Ring does not require that we reconsider the Caldwell issue raised in this case. Notwithstanding the addition of the Ring argument to the Caldwell claim, Robinson has not presented any new law or fact in this habeas petition that warrants a reconsideration of our previous ruling in this case that no Caldwell violations occurred in this case. See Robinson, 574 So.2d at 113. Therefore, we deny habeas relief on this claim.
Accordingly, based on the foregoing, we affirm the trial court's denial of 3.851 relief and we deny habeas corpus relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the *1267 decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] Robinson v. Moore, No. 99-00415-CV-J-10 (M.D.Fla.2001).
[2] Further, this Court noted that Fields recanted only after the statute of limitations passed for a potential perjury charge in this case. Id. at 692 n. 8.
[3] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[4] Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
[5] This Court has also denied Robinson's ineffective assistance of counsel claim, which constituted a variation of his Brady/Giglio claim. See Robinson, 707 So.2d at 694.
[6] The record reflects that the types of notations that Robinson attempted to admit about the officers consisted of things like being reprimanded for failing to follow orders, refusing to report to work, and refusing to appear in court.
[7] On appeal after his resentencing, Robinson raised a Caldwell claim, arguing that the jury instructions diminished the jury's role in the sentencing process. This Court denied relief on that claim and related claims in our opinion, stating:

This Court previously has ruled adversely to Robinson's additional claims that call into doubt the propriety of the standard jury instructions; that the trial court improperly rejected Robinson's requests for additional jury instructions; that the jury was misadvised in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), see Grossman v. State, 525 So.2d 833, 839 (Fla.1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989)....
Robinson, 574 So.2d at 113 (footnotes omitted).