961 So.2d 995 (2007)
Lemuel HAYWOOD, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-936.
District Court of Appeal of Florida, Fourth District.
July 5, 2007.
Rehearing Denied August 31, 2007.
Sarah S. Butters and Andrew P. Lannon of Holland & Knight LLP, Tallahassee, and Steven L. Brannock, Tampa, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.
*996 STONE, J.
We reverse the summary denial of Haywood's rule 3.850 motion for post-conviction relief.
Haywood was convicted in 1984 on two counts of sexual battery with a firearm, one count of kidnapping with a firearm, and one count of robbery with a firearm. He was sentenced to four concurrent terms of life imprisonment. In 2003, the trial court granted Haywood's motion for DNA testing on evidence taken from the victim. The DNA tests excluded Haywood as the donor of DNA (semen) found on the victim's underwear and jeans. The DNA, in fact, was that of the victim's boyfriend.[1] Haywood seeks a new trial based on newly discovered evidence.
To prevail on his claim of newly discovered evidence, Haywood must show that the evidence would "probably produce an acquittal on retrial." Mills v. State, 786 So.2d 547, 549-50 (Fla.2001) (citing Jones v. State, 709 So.2d 512, 521 (Fla.1998)); see also Rogers v. State, 783 So.2d 980, 1003 (Fla.2001); Williams v. State, 876 So.2d 1234, 1235 (Fla. 4th DCA 2004).
The test for determining whether newly discovered evidence meets the required showing has been clearly stated by the supreme court.
Newly discovered evidence meets this standard if "it weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability" . . . The assessment also considers whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether this evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
Williamson v. State, 961 So.2d 229, 2007 WL 1362872 (Fla. May 10, 2007) (citations omitted) (emphasis added).
The state concedes that the DNA evidence is newly discovered evidence, in that it could not have been determined at the time of trial, but disputes the fact that the evidence probably would have produced an acquittal at trial. The trial court evaluated the newly discovered evidence and the trial record to determine whether there is a probability that, with the new evidence, the defendant would have probably been acquitted at trial, see Robinson v. State, 865 So.2d 1259, 1262 (Fla.2004), but the court did not conduct an evidentiary hearing, as the newly discovered facts are undisputed.
The question is essentially one of impeachment as to identification. The victim testified at trial that Haywood was the man that robbed the store where she was working, kidnapped her, and sexually battered her. However, she was not able to identify anyone at the live line-up and was uncertain as to a photo ID. There were also questions raised on cross-examination regarding discrepancies between Haywood's appearance and the victim's earlier statement, including some noticeable physical features she had not described. At trial, the victim was not able to recall Haywood's tattoo and that he had no teeth, even though she was forced to kiss her attacker. The emergency room physician who examined the victim found no injuries. He also testified that the victim reported to him that two men committed the sexual battery. At trial, she testified that only Haywood did so. On cross-examination, *997 the victim stated that the man who robbed the store and assaulted her was wearing sunglasses and had dark skin and craters or pock marks on his face. Haywood is a light skinned black male and does not have a pock marked complexion. The victim also did not see any tattoos, although Haywood has a prominent tattoo on his arm.
The testimony of the other witness to the robbery, the store manager, was also impeached. Although she identified Haywood's tattoo in her deposition, she stated that the tattoo she saw was red, when in fact Haywood's tattoo is black and blue. Furthermore, Haywood's tattoo is on his left arm and, in deposition, the witness stated that the tattoo was on his right arm. Additionally, although she had picked Haywood in a photo line-up, she was not sure if he was the perpetrator identified as wearing a blue suit or the perpetrator stated to be wearing a bathing suit. She also acknowledged that talking to the police about her identification could have influenced her identification.
The state relied heavily on the serology evidence and the identification in its closing argument. At trial, a serologist testified that the blood type of the seminal fluid found on the victim's underwear and jeans matched Haywood's blood type and that 70% of the male population, including Haywood, could have contributed the seminal fluid. The serologist also stated that about 22% of the male population had that blood type. The serologist's testimony was treated by the state as significant. We cannot know the extent to which, if any, the jury may have placed inordinate weight on it, but, clearly, the jury was likely influenced to some extent by this testimony. The trial court, in denying relief, concluded that the jury placed more weight on the other evidence.
Had the jury heard the newly uncovered DNA evidence, it would have had some impact. On the other hand, we recognize that there is proof supporting the victim's identification of Haywood as the person who committed the robbery, as he was found, the following day, wearing a pair of boots identified as taken from the Payless store on the day of the robbery. The original price sticker was still on the shoes. He told the police that an unidentified "associate" had given them to him. We also recognize that the DNA evidence on the victim's clothing did not point to some other potential suspect as the perpetrator of the offenses. Rather, it identified the victim's boyfriend as the donor.
Had the victim not testified that the perpetrator had entered her and ejaculated, without the serologist testimony, the new evidence might well be deemed of little significance. However, in the context of these facts and given the additional impeachment of the identification, we conclude that the newly discovered evidence was of "such nature that it would probably produce an acquittal on retrial." See Jones, 709 So.2d at 521; see also Williams.
We, therefore, reverse and remand for new trial.
WARNER and MAY, JJ., concur.
NOTES
[1] However, neither Haywood nor the boyfriend could be excluded as the donor of saliva found on a handkerchief.