866 So.2d 23 (2004)
James HITCHCOCK, Appellant,
v.
STATE of Florida, Appellee.
No. SC02-2037.
Supreme Court of Florida.
January 15, 2004.
James L. Driscoll, Jr., Assistant CCC, Capital Collateral Regional CounselMiddle, Tampa, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Kenneth S. Nunnelley, Senior Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
James Hitchcock appeals an order of the circuit court denying his motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. We *24 have jurisdiction, see art. V, § 3(b)(1), Fla. Const., and affirm the decision below.

FACTS AND PROCEDURAL HISTORY
Hitchcock was convicted of first-degree murder for the death of his brother's thirteen-year-old stepdaughter. This Court's decision on direct appeal summarized the facts of the crime as follows:
Unemployed, ill, and with no place to live, Hitchcock moved in with his brother Richard and Richard's family two to three weeks before the murder. On the evening of the murder, appellant watched television with Richard and his family until around 11:00 p.m. He then left the house and went into Winter Garden where he spent several hours drinking beer and smoking marijuana with friends.
According to a statement Hitchcock made after his arrest, he returned around 2:30 a.m. and entered the house through a dining room window. He went into the victim's bedroom and had sexual intercourse with her. Afterwards, she said that she was hurt and was going to tell her mother. When she started to yell because he would not let her leave the bedroom, Hitchcock choked her and carried her outside. The girl still refused to be quiet so appellant choked and beat her until she was quiet and pushed her body into some bushes. He then returned to the house, showered, and went to bed.
At trial Hitchcock repudiated his prior statement. He testified that the victim let him into the house and consented to having intercourse. Following this activity, his brother Richard entered the bedroom, dragged the girl outside, and began choking her. She was dead by the time appellant got Richard away from her. When Richard told him that he hadn't meant to kill her, Hitchcock told him to go back inside and that he, the appellant, would cover up for his brother. According to Hitchcock, he gave his prior statement only because he was trying to protect Richard.
Hitchcock v. State, 413 So.2d 741, 743 (Fla. 1982). The jury convicted Hitchcock of first-degree murder and recommended a death sentence, which the trial court imposed. This Court affirmed the conviction and sentence; however, postconviction proceedings resulted in a lengthy procedural history and three resentencing proceedings.[1] Hitchcock's last sentence of *25 death was affirmed by this Court in 2000. See Hitchcock v. State, 755 So.2d 638 (Fla. 2000). On November 30, 2001, he filed a second amended rule 3.850 motion for postconviction relief, which is now pending in the circuit court.
On December 29, 2001, Hitchcock also filed a motion for postconviction DNA testing pursuant to Florida Rule of Criminal Procedure 3.853. In that motion, he alleged the following facts:
1. James Hitchcock was charged with the murder of Cynthia Driggers. Cynthia Driggers was James Hitchcock's step niece. At the time of offense James Hitchcock lived in the same house as the victim, his brother Richard Hitchcock, the victim's mother and other siblings. James Hitchcock was accused of strangling the victim.
2. At trial James Hitchcock testified that it was his brother Richard who killed the victim after finding the victim and James Hitchcock in a post-sexual situation.
Under the heading of "Statement of Innocence," Hitchcock asserted his innocence of the murder charge and death penalty, maintaining that the true murderer was Richard Hitchcock. Specifically, he stated in the motion that "[w]hile James Hitchcock admits to sexual intercourse with Cynthia Driggers, it was Richard Hitchcock who committed the murder." He also asserted that the physical evidence presented at trial was incompetently analyzed by the Sanford Crime Laboratory microanalyst who conducted the hair comparisons in this case and testified at trial. Most relevant to this appeal, Hitchcock alleged the following, under the heading of "Relevance of DNA Testing":
1. Pursuant to Florida Rule of Criminal Procedure 3.853(b)(3) and (b)(4) James Hitchcock again states that he is innocent of this crime and of the death penalty as pled in the above section. The identification of the true murderer of the victim is [as] genuinely disputed now as it was during trial.
2. Pursuant to this rule, James Hitchcock states that DNA testing and hair analysis requested in this motion will exonerate James Hitchcock. Due to the location of the evidence DNA testing may show that Richard Hitchcock strangled the victim, that his hair was present at the crime scene, that his blood was present at the scene, or that there was other forensic evidence.
3. The DNA and micro analysis would also tend to exonerate James Hitchcock and show that the Diana Bass' hair analysis improperly excluded Richard Hitchcock and improperly inculpated James Hitchcock.
4. Lastly, the evidence would also show that James Hitchcock was innocent of the death penalty by showing that even if he was involved in the death of the victim James Hitchcock was a minor participant. See Section 921.141(6)(d), Florida Statutes. Had James Hitchcock committed this offense this would mitigate his death sentence.
Hitchcock concluded his motion with a request for the circuit court to order "nuclear DNA typing by short tandem repeat STR DNA typing or other method that can distinguish between brothers" by an independent lab on the following enumerated items: (1) a "red, white and blue pullover men's shirt"; (2) a "pink and white towel"; (3) a "gold towel"; (4) a "red, white and pink wash cloth"; (5) a *26 "brown leather belt"; (6) a "small container with dirt sample"; (7) "hairs from victim's bed pillow"; (8) "foreign objects from vagina"; (9) "weeds from left leg"; (10) "foreign objects from left leg"; (11) "vegetation from the abdomen"; (12) "finger nails from left hand"; (13) "scrapings from buttocks"; (14) a "soil sample from under body"; (15) a "soil sample from area of struggle"; (16) "one paper sheet used to wrap the body at the scene and bags from hands"; (17) "clothing criminalblue jeans"; (18) "medical criminalblood"; (19) "medical criminalsaliva"; (20) "clothing criminalsweatshirt"; (21) "clothing criminalshorts"; (22) "clothing criminalshirt"; (23) "medical criminal hair"; and (24) "medical criminalforeign matter."
In its response, the State argued that Hitchcock's motion failed to set out the evidentiary value of the evidence proposed to be tested and how such testing would exonerate or mitigate the sentence. The State specifically noted that James Hitchcock, Richard Hitchcock, and the victim all occupied the same household. The State asserted that "[i]t is therefore likely that biological samples such as hair, sloughed off skin, small amounts of bodily fluids, eyelashes, and finger and toe nail clippings would constantly be inadvertently deposited by all three persons throughout the house and curtilage they shared." After receiving Hitchcock's motion and the State's response, the circuit court held a hearing, at which the State further argued that any DNA evidence from the victim's vaginal area would not be exonerating because James Hitchcock confessed to having sexual intercourse with the victim. Despite the State's suggestion that the court provide Hitchcock with additional time to file a more substantive motion, Hitchcock stood by his original motion, arguing that it met the statutory requirements.
On June 25, 2002, the circuit court denied Hitchcock's motion, writing:
Defendant was convicted of first-degree murder and sentenced to death. He argues he is innocent of the crime and DNA testing and hair analysis will exonerate him. He admits to having sexual intercourse with the victim, Cynthia Driggers, but asserts that it was his brother, Richard Hitchcock who strangled her. He alleges that the Sanford Crime Laboratory, which analyzed the physical evidence obtained from the scene, was incompetent, and that Diana Bass, the analyst who conducted the hair comparisons, lacked the necessary training.
However, the motion fails to set forth the evidentiary value of the evidence to be tested or explain how the results would exonerate Defendant or mitigate his sentence. Defendant alleges that DNA testing "may show that Richard Hitchcock strangled the victim, that his hair was present at the crime scene, that his blood was present at the scene, or that there was other forensic evidence." (Defendant's motion, page 6, emphasis added.) Such a speculative claim cannot support the granting of postconviction DNA testing. Moreover, Defendant, his brother, and the victim occupied the same house, and all three would have deposited hair, skin, bodily fluid, eyelashes, and nail clippings throughout the house.
Defendant next alleges that the testing would tend to exonerate him and show that the hair analysis improperly excluded Richard Hitchcock as a suspect, but he does not explain why this is so. Finally, he alleges the testing would show that even if he was involved in the death of the victim, he was a minor participant, which would mitigate his *27 death sentence. Again, however, he fails to explain why this is so.
It is undisputed that Defendant confessed to having sexual intercourse with the victim, and Defendant fails to establish a reasonable probability that DNA testing would be able to exonerate him of the subsequent murder. The presence of physical evidence linked to Richard Hitchcock would not establish that Defendant was not at the scene or that he did not commit the murder. See Galloway v. State, 802 So.2d 1173 (Fla. 1st DCA 2001).
State v. Hitchcock, No. CR76-1942 at 1-2 (Fla. 9th Cir. Ct. order filed June 24, 2002). Hitchcock now appeals the denial of his motion.

ANALYSIS
This Court adopted Florida Rule of Criminal Procedure 3.853 in 2001, tracking the provisions of section 925.11, Florida Statutes (2001). See Amendment to Florida Rules of Criminal Procedure Creating Rule 3.853 (DNA Testing), 807 So.2d 633 (Fla.2001). Under rule 3.853, a motion for postconviction DNA testing must include, among other things, "a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime." Fla. R.Crim. P. 3.853(b)(3) (emphasis added). After ordering and receiving the State's response, the circuit court "shall... enter an order on the merits of the motion." Fla. R.Crim. P. 3.853(c)(3). Further:
The court shall make the following findings when ruling on the motion:
(A) Whether it has been shown that physical evidence that may contain DNA still exists.
(B) Whether the results of DNA testing of that physical evidence likely would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
(C) Whether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.

Fla. R.Crim. P. 3.853(c)(5) (emphasis added).
The clear requirement of these provisions is that a movant, in pleading the requirements of rule 3.853, must lay out with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence. In order for the trial court to make the required findings, the movant must demonstrate the nexus between the potential results of DNA testing on each piece of evidence and the issues in the case. Here, Hitchcock failed to demonstrate such a nexus.
With respect to the items listed in Hitchcock's motion, only a general reference and identification of the type of item was given, without any other relevant information.[2] Rule 3.853 is not intended to be a fishing expedition. Rather, it is intended to provide a defendant with an opportunity for DNA testing of material *28 not previously tested or of previously tested material when the results of previous DNA testing were inconclusive and subsequent developments in DNA testing techniques would likely provide a definitive result, and when a motion for such testing provides a basis upon which a trial court can make the findings expressly set forth in subdivision (c)(5) of rule 3.853. It was Hitchcock's burden to explain, with reference to specific facts about the crime and the items he wished to have tested, "how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or ... will mitigate the sentence received by the movant for that crime." He has not met that burden. Therefore, we find no error in the circuit court ruling that "the motion fail[ed] to set forth the evidentiary value of the evidence to be tested or explain how the results would exonerate Defendant or mitigate his sentence."[3]

CONCLUSION
For the foregoing reasons, we affirm the decision below denying Hitchcock's 3.853 motion for postconviction DNA testing.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] On direct appeal, this Court affirmed Hitchcock's conviction and first sentence. See id. This Court also affirmed the denial of Hitchcock's motion for postconviction relief. See Hitchcock v. State, 432 So.2d 42 (Fla.1983). In later federal habeas corpus proceedings, however, the United States Supreme Court granted certiorari and vacated Hitchcock's death sentence because the jury was instructed not to, and the sentencing judge refused to, consider evidence of nonstatutory mitigating circumstances. See Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Upon resentencing, Hitchcock was again sentenced to the death penalty, and this Court affirmed the sentence. See Hitchcock v. State, 578 So.2d 685 (Fla.1990). But the United States Supreme Court again granted certiorari and remanded to this Court for reconsideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). See Hitchcock v. Florida, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). On remand, this Court vacated Hitchcock's death sentence and directed the trial court to conduct a new penalty proceeding. Hitchcock v. State, 614 So.2d 483 (Fla. 1993). In Hitchcock's second resentencing, Hitchcock was again sentenced to the death penalty. But, on appeal, this Court remanded for a third sentencing proceeding because evidence portraying Hitchcock as a pedophile was erroneously made a feature of his second sentencing proceeding. Hitchcock v. State, 673 So.2d 859 (Fla.1996). Upon his third resentencing, Hitchcock was sentenced to the death penalty for the fourth time, and this Court affirmed the sentence. Hitchcock v. State, 755 So.2d 638 (Fla.2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 633, 148 L.Ed.2d 541 (2000).
[2] For example, Hitchcock has listed a number of items of clothing, but has not indicated whether those clothes belonged to the victim, the defendant, or Richard Hitchcock, whether the items were found near the scene of the crime or worn by someone the night of the crime, or whether there is any indication from evidence logs, crime lab reports, or trial testimony that any bodily fluids may exist on these items.
[3] Additionally, Hitchcock raised before this Court a constitutional argument that the circuit court's denial of his motion violated his right to habeas corpus relief. We conclude, as the State correctly noted, that this argument was not preserved because Hitchcock did not claim a constitutional right to DNA testing before the circuit court below.