895 So.2d 398 (2004)
Loran K. COLE, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-2204.
Supreme Court of Florida.
November 24, 2004.
Rehearing Denied February 24, 2005.
Bill Jennings, Capital Collateral Regional Counsel, Richard Kiley and James Viggiano, Assistants CCRC, Middle Region, Tampa, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Loran K. Cole appeals an order of the circuit court denying a motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. We have jurisdiction, see art. V, § 3(b)(1), Fla. Const., and affirm the circuit court's denial.

FACTS AND PROCEDURAL HISTORY
The facts of Cole's crimes are important to this appeal. Therefore, we set them forth in detail as previously recited by this Court on direct appeal:
On February 18, 1994, Pam Edwards, a senior at Eckerd College in St. Petersburg, Florida, drove to the Ocala National Forest, where she met her brother, John Edwards, a freshman at Florida State University in Tallahassee, Florida. The two planned on camping in the forest for the weekend and eventually decided to camp in Hopkins Prairie. They were setting up camp when Loran Cole briefly stopped by their campsite. Cole soon returned to the campsite, introduced himself as "Kevin," and helped them set up camp. After John and Pam ate dinner, Cole and William Paul came to the Edwards' campsite. Paul was carrying a walking stick and was introduced to the Edwards as Cole's brother. The four sat around the campfire, and at about 10:45 p.m., they decided to walk to a pond.

*399 The four walked for a while but never found the pond. Instead, Cole jumped on Pam and knocked her to the ground. She got up and tried to run; however, Cole caught her, hit her on the back of the head, handcuffed her, and threw her down on the ground. Meanwhile, John had taken Paul's walking stick and was hitting him with it. Cole then helped Paul subdue John and moved John on the ground next to Pam. While they lay close to each other on the ground, John apologized to Pam for having exposed them to the dangers of these two strangers. Cole told the Edwards that he wanted to take their cars, and he went through their pockets and took their personal property, including their jewelry.
Paul took Pam up the trail, and he was complaining about his hand and head, which were injured in the altercation with John. Pam could hear Cole asking John why he hurt Cole's brother and could hear John grunt a few times. Cole then came to where Pam and Paul were sitting and told them that they were going to wait until John passed out. Cole called back to John several times, and John responded by moaning. Eventually, Cole told Pam he was going to move John off the trail and tie him up. Pam then heard something that resembled a gagging sound. When Cole returned, he said that John must be having trouble with his dinner, hinting that John was vomiting. John died that night from a slashed throat and three blows to the head, which fractured his skull. The injury to the throat caused a loss of blood externally and internally into John's lungs.
Pam, Paul, and Cole then started walking back to Cole's campsite. On the way, they walked past John, and he was not moving. At the campsite, Cole forced Pam to sleep naked by threatening her that unless she cooperated, she and John would be killed. Cole then forced her to have sexual intercourse with him.
The next morning, Cole went to check on John and told Pam that John was fine. Cole left the campsite to purchase marijuana. When he returned, the three smoked marijuana, and Cole again forced Pam to have intercourse with him. After eating dinner, they packed up as much of the camp as would fit into the backpacks carried by Cole and Paul. Cole then gagged Pam and tied her to two trees. Cole and Paul left in Pam's car and went to a friend's trailer, where they spent the night. The two left several items of John Edwards' personal property at the trailer. Thereafter, Cole and Paul returned Pam's car to the Ocala National Forest and took John's car, a Geo Metro.
By the early morning on Sunday, Pam was able to free herself of the ropes. She did not move because she was afraid that if Cole and Paul returned and she was not there, they would hurt John. She stayed in that spot until daylight and tried to find John. When she was unable to find him, she flagged down a motorist, who took her to call the police. The police returned with Pam to the scene, and the police located John's body. The body was face down and was covered with pine needles, sand, debris, and small, freshly cut palm fronds. Both of his hands were in an upward fetal position; there was a shoestring ligature around his left wrist and a shoestring partially wrapped around his right wrist.
Police thereafter arrested Paul and Cole in Ocala on Monday, February 21, 1994. Paul and Cole were indicted on charges of first-degree murder, two counts of kidnapping with a weapon, and *400 two counts of robbery with a weapon. Cole was also indicted on two counts of sexual battery. Paul pleaded nolo contendere to the charges and was sentenced to life in prison without possibility of parole for twenty-five years on the murder charge and concurrent terms on the remaining charges. After a jury trial, Cole was found guilty on all counts of the indictment. A penalty-phase hearing was held, after which the jury unanimously recommended death. Finding four aggravators, no statutory mitigators, and two nonstatutory mitigators, the trial court followed the jury's recommendation and sentenced Cole to death.
Cole v. State, 701 So.2d 845, 848-49 (Fla.1997) (emphasis added) (footnotes omitted). Specifically, the trial court found the following aggravators: (1) Cole had previously been convicted of another felony; (2) the murder was committed during the course of a kidnapping; (3) the murder was committed for pecuniary gain; and (4) the murder was especially heinous, atrocious, or cruel.
This Court affirmed Cole's convictions and death sentence on direct appeal. Id. at 856. Cole then timely filed an initial Florida Rule of Criminal Procedure 3.850 motion and thereafter an amended rule 3.850 motion. The trial court denied postconviction relief. On appeal, this Court affirmed the trial court's denial of Cole's rule 3.850 motion and denied Cole's petition for writ of habeas corpus. See Cole v. State, 841 So.2d 409 (Fla.2003). In that decision, we also noted that Cole sought postconviction DNA testing and stated:
Cole did not include this claim in his rule 3.850 motion; instead, Cole made an oral request for the DNA testing at the Huff hearing. [Huff v. State, 622 So.2d 982 (Fla.1993)]. The trial court summarily denied Cole's request without explanation. We note that the trial court's denial of Cole's DNA request came prior to the effective date of section 925.11, Florida Statutes (2001), and Florida Rule of Criminal Procedure 3.853 (DNA testing). We do not address Cole's request for relief at this time except to state that our decision should not be read to prohibit Cole from seeking such testing pursuant to the mandates of section 925.11 and rule 3.853.
Id. at 419.
Thereafter, on September 20, 2003, Cole filed with the circuit court a rule 3.853 motion for postconviction DNA testing, requesting DNA testing on:
1) all physical evidence, including swabs, slides, and hair, contained in the sexual assault kit taken from Pamela Edwards; 2) blood sample taken from William Paul; 3) blood sample taken from Loran Cole; 4) `panties' identified as having come from Pamela Edwards; [and 5)] `blue sweat pants' identified as having come from Pamela Edwards.
In his motion, Cole noted that Pamela Edwards testified at trial that only Cole, and not Paul, sexually assaulted her. Cole also noted that Pamela Edwards testified that during the time she spent with Cole and Paul, she was struck over the head with a hard object, causing her to be stunned and dizzy; smoked marijuana and was "pretty well stoned"; and lost consciousness at one point. Cole then alleged:
8. The state's first degree premeditated murder case against Mr. Cole was circumstantial and depended on Ms. Edwards' testimony to establish an opportunity for Mr. Cole to have killed Mr. Edwards and to establish premeditation. For that reason, the clarity of Ms. Edwards' memory and the accuracy of her recollection were critical factors in the state's case.

*401 9. DNA testing would reveal whether, in fact, Mr. Paul had sexual relations with Ms. Edwards during the incident. If DNA evidence revealed that Mr. Paul also had sexual relations with Ms. Edwards, the clarity of her recollection would be impeached. Because Ms. Edwards' testimony was crucial to the state's theories of guilt and death-eligibility, DNA testing showing that Mr. Paul had sexual relations with the victim will exonerate Mr. Cole under the state's theory of guilt and mitigate his death sentence.
The State filed a written response to Cole's motion, and Cole filed a written reply. On October 30, 2003, the circuit court held a hearing on the motion. In that hearing, Cole's counsel elaborated on his claim:
This was a circumstantial case. Mr. Cole's guilt and the fact that he could have actually committed the murder rather than Mr. Paul depended entirely on Ms. Edwards' testimony.
If it's established that Ms. Edwards' testimony cannot be considered reliable, which would be the case if DNA evidence proved that Mr. Paul did also sexually assault her, it would impeach all of her testimony.
In response, counsel for the State argued:
[W]hat the Defendant has to make out is a reasonable probability of an acquittal or a reasonable probability of mitigation of sentence.
And under the facts of this case . . . the DNA testing that the Defendant seeks is, at most, impeachment on a collateral matter; and it certainly is not something that calls the reliability of the conviction and sentence into question.
. . . .
And how the assertion that Paul also sexually battered Ms. Edwards comes in to somehow impeach her trial testimony is such a pyramid of inferences, if you will, that there is no reasonable probability of a different result, even if the testing showed what Mr. Cole now asserts that it might show.
. . . .
I would suggest that it's not going to be admissible under any circumstances, anyway. It's merely impeachment on a collateral matter.
On November 3, 2003, the circuit court denied the motion, holding that Cole had not established, as required by rule 3.853, a reasonable probability that the testing would exonerate him or mitigate his sentence. This appeal followed.

ANALYSIS
In 2001, this Court adopted rule 3.853, which tracks the provisions of section 925.11, Florida Statutes. See Amendment to Fla. R. of Crim. P. Creating Rule 3.853 (DNA Testing), 807 So.2d 633 (Fla.2001). Under that rule, a petition for postconviction DNA testing must include, among other things:
[A] statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime.
Fla. R.Crim. P. 3.853(b)(3). The court reviewing the petition must order the prosecuting authority to respond if the petition is facially sufficient, Fla. R.Crim. P. 3.853(c)(2), and thereafter enter an order on the merits, making the following findings:
(A) Whether it has been shown that physical evidence that may contain DNA still exists.
(B) Whether the results of DNA testing of that physical evidence likely *402 would be admissible at trial and whether there exists reliable proof to establish that the evidence containing the tested DNA is authentic and would be admissible at a future hearing.
(C) Whether there is reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.

Fla. R.Crim. P. 3.853(c)(5) (emphasis added).
In its order denying Cole's rule 3.853 motion, the circuit court first noted that it was familiar with the facts of the case from both the trial and postconviction proceedings and that it also had reexamined the file and trial transcripts. The court then held that "the Defendant would not have been acquitted or received a lesser sentence if the Defendant offered the DNA test results at trial." State v. Cole, No. 94-498-CF at 2 (Fla. 5th Cir. Ct. order filed Nov. 3, 2003). In support of this conclusion, the circuit court wrote:
The Defendant's claim that the co-defendant, William Paul, "might have" had sexual relations with Pamela Edwards is highly speculative. Although the Defendant struck Pamela Edwards in [the] head and she was momentarily "dazed," Pamela Edwards was able to clearly and cogently recount the events of the night of the murder. It is clear from the evidence offered at trial, that the Defendant killed John Edwards prior to the sexual assaults committed against Pamela Edwards. John Edwards died shortly after the Defendant attacked him and within minutes of the time Pamela Edward's heard her brother make gagging sounds. The DNA evidence from the sexual assaults would not exonerate the Defendant of John Edward's murder.
Nor would the DNA evidence affect the Defendant's sentence because the DNA evidence would not affect the Court's findings regarding the statutory aggravators or proportionality analysis.... [T]he DNA test results would not affect the court's finding that the murder was especially heinous, atrocious and cruel because the sexual assaults were not considered by the Court in its analysis regarding whether the murder was especially heinous, atrocious and cruel. The sexual assaults were committed well after the Defendant murdered John Edwards and were not committed against Mr. Edwards. Finally, the DNA would have no impact on a proportionality analysis because the Defendant does not contest the sexual assaults he himself committed and because the Defendant remains the criminal participant who was primarily responsible for the death of John Edwards.
The Defendant's claim that the co-defendant may have "also had sexual relations with Pamela Edwards" is pure conjecture. There is not a reasonable probability that the testing would exonerate the Defendant or mitigate his sentence.
Id. at 6-7.
In Robinson v. State, 865 So.2d 1259, 1264-65 (Fla.), cert. denied, 540 U.S. 1171, 124 S.Ct. 1196, 157 L.Ed.2d 1224, and cert. denied, 540 U.S. 1171, 124 S.Ct. 1197, 157 L.Ed.2d 1225 (2004), we held:
Pursuant to Florida Rule of Criminal Procedure 3.853, the defendant must allege with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence. See Fla. R.Crim. P. 3.853(b)(1)-(6); Hitchcock v. State, 866 So.2d 23 (Fla.2004). It is the defendant's burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant's sentence. Id.

*403 In Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004), we likewise set forth a specific holding applicable to 3.853 motions:
The clear requirement of these provisions is that a movant, in pleading the requirements of rule 3.853, must lay out with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence. In order for the trial court to make the required findings, the movant must demonstrate the nexus between the potential results of DNA testing on each piece of evidence and the issues in the case. Here, Hitchcock failed to demonstrate such a nexus.
We said specifically that "[r]ule 3.853 is not intended to be a fishing expedition." Id.
Applying these holdings to this case, we find no basis to determine that the trial court erred in denying Cole's 3.853 motion. The allegations of the motion do not give rise to a reasonable probability of Cole being acquitted or receiving a lesser sentence. Therefore, we affirm.[1]
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Cole asserts a second basis for relief  that the denial of his rule 3.853 motion for postconviction DNA testing violates his rights to habeas corpus relief under the Florida and United States Constitutions. Specifically, he argues that the Florida and United States Constitutions provide a right to access evidence for the purposes of DNA testing if it "could prove a man innocent in fact or of the death penalty." Appellant's Initial Brief at 26. This argument was raised below and thereby preserved for appeal. However, Cole did not file a motion below requesting that the circuit court hold that rule 3.853 is facially unconstitutional. Therefore, it appears his argument is an as-applied constitutional challenge. We conclude that this claim is fundamentally flawed. Because we agree with the circuit court that Cole would not have been acquitted or received a lesser sentence if he had offered the DNA test results at trial, any constitutional right to access evidence that "could prove a man innocent in fact or of the death penalty" is not implicated in this case.