924 So.2d 34 (2006)
Johnnie Lee HAMPTON, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-3024.
District Court of Appeal of Florida, Third District.
January 25, 2006.
Johnnie Lee Hampton, in proper person.
Charles J. Crist, Jr., Attorney General, and Valentina M. Tejera, Assistant Attorney General, for appellee.
Before COPE, C.J., and SHEPHERD and ROTHENBERG, JJ.
COPE, C.J.
Johnnie Lee Hampton appeals an order denying his motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. Because the record does not conclusively refute the claim of defendant-appellant *35 Hampton, we remand for further proceedings.
The defendant was convicted of a sexual battery committed in 1973. The conviction was affirmed on appeal. See Hampton v. State, 308 So.2d 560 (Fla. 3d DCA 1975). He remains incarcerated on a 75-year sentence.
The defendant filed a motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. The trial court denied the motion and the defendant has appealed.
The trial court found that the identity of the defendant was a genuinely disputed fact at trial. See Fla. R.Crim. P. 3.853(b)(4). The record supports that finding.
The trial court denied relief, however, stating in part that "[p]hysical evidence that may contain DNA does not exist. . . ." The trial court erred in making that finding.
In the present case, the trial court summarily denied the motion for DNA testing, that is, denied the motion without conducting an evidentiary hearing. Where there is a summary denial of a Rule 3.853 motion, this court must reverse unless the postconviction record, see Fla. R.App. P. 9.141(b)(2)(A), shows conclusively that the appellant is entitled to no relief. See Fla. R.Crim. P. 9.141(b)(2)(D). The present record does not conclusively refute the defendant's claim that testable material exists.
The defendant attached to his motion a copy of a memorandum written by Dr. Arthur F. Schiff of the office of the Dade County Medical Examiner on May 14, 1973. The State has also supplemented the record with the deposition of Dr. Schiff taken in the defendant's case on November 28, 1973 ("Dr. Schiff Deposition").
Dr. Schiff interviewed the victim shortly after the crime and conducted a physical examination. From the victim's vulva the doctor recovered approximately one half cc of cloudy material containing spermatozoa. The doctor estimated the sperm to be between one and ten hours old at the time the sample was collected.
The doctor also recovered a pubic hair from the victim's vagina, and drew a blood sample from the victim. These materials were given to the investigating officer, Officer Hughes, to take to the Crime Lab. The Crime Lab was to perform blood typing analysis.
The defendant's motion states that he voluntarily submitted a blood sample for testing. The defendant states that he does not know what test results were obtained, and the test results were never mentioned at trial.
In its response in the trial court, the State said, "The Clerk of Courts does not have this item of evidence in their possession.. . . In fact, it was never admitted in trial. Likewise, the investigating police agency does not have this item of evidence in their possession." R. 25. In support of these assertions, the State submitted an affidavit from a circuit court deputy clerk and an affidavit from the Homestead Police Department stating that neither agency could locate any evidence from the defendant's case.
The State's response does not conclusively refute the defendant's claim. The deposition of Dr. Schiff indicates that he gave the samples to the investigating officer to deliver to the Crime Lab. As far as this record shows, the State never made any inquiry at the Crime Lab regarding the samples from the defendant's case and whether any testable material still exists. Since the record does not conclusively refute the defendant's claim regarding the existence of the samples which the police *36 collected, we reverse on this point and remand for further proceedings.[1]
The State also argues, and the trial court ruled, that "an exclusionary DNA test result would not exonerate the defendant." (citations omitted). This assertion, too, is not supported by the present record.
The State argues that DNA testing cannot exonerate the defendant because there were multiple assailants. The victim in this case stated that she was assaulted by three males, each of whom had forcible intercourse with her. The State argues in substance that if DNA testing identified a single assailant, the results of that test would not be enough to exclude the defendant as one of the perpetrators. However, in his deposition Dr. Schiff acknowledged the possibility that material from all three of the assailants could be contained within the sample that he recovered from the victim. Dr. Schiff Deposition at 7.
The State introduced no scientific evidence in the trial court. The State has thus not addressed the question whether, if genetic material from the three assailants is contained in the sample collected from the victim, DNA testing could generate a DNA profile for each of the three assailants. If that is a possibility from a scientific viewpoint, and if three DNA profiles were generated, none of which match the defendant, then such evidence could exonerate the defendant.[2], [3]See generally David L. Faigman, David H. Kaye, Michael J. Saks, & Joseph Sanders, Modern Scientific Evidence: The Law and Science of Expert Testimony § 25-24.3 (2003).
The State relies on Galloway v. State, 802 So.2d 1173 (Fla. 1st DCA 2001), but that case is not on point. In Galloway the court did not state the facts of the underlying crime. The opinion indicates that Galloway was convicted along with two codefendants of two counts of robbery and one count of sexual battery. The opinion appears to say that there was only one sexual assault committed by one of the three defendants, and that the other two defendants were culpable as principals for assisting in the crime. If we are reading the opinion correctly, then the fact that there was semen deposited by only one of the three defendants would not exonerate the other two. That is so because the two defendants aided the third defendant in committing the sexual battery.
In the present case, by contrast, the victim testified that there were three assailants and she was forced to have intercourse with all three. Assuming testable material still exists, and assuming that DNA testing resulted in a DNA profile for three individuals, none of whom is the defendant, then such evidence could exonerate the defendant. The situation presented *37 here differs from that which existed in Galloway.
The order denying the defendant's motion for DNA testing is reversed and the cause is remanded for further proceedings consistent herewith.
NOTES
[1] The Second District takes the position that even if all of the relevant record custodians file affidavits stating that testable material no longer exists, an evidentiary hearing is required and the motion cannot be disposed of summarily. See Zollman v. State, 854 So.2d 775, 776 (Fla. 2d DCA 2003). We need not reach that issue in this case, because the State failed to make inquiry of a relevant custodian, the Crime Lab.
[2] Naturally the possibility of a contributor through consensual intercourse would need to be considered. The deposition of Dr. Schiff indicates that he recorded the date of the victim's last sexual intercourse prior to the sexual battery, id. at 7-8, although the report containing that information does not appear to be in the present record. As already stated, Doctor Schiff's testing showed that the sperm sample was one to ten hours old.
[3] On remand the defendant is free to make any other relevant arguments on his behalf should it turn out that there is testable material and that one or more DNA profiles is obtained.