950 So.2d 442 (2007)
Tyrone JORDAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-1975.
District Court of Appeal of Florida, Third District.
February 7, 2007.
*443 Tyrone Jordan, in proper person.
Bill McCollum, Attorney General, for appellee.
Before COPE, C.J., and GREEN and LAGOA, JJ.
LAGOA, Judge.
Tyrone Jordan ("Jordan") appeals an order summarily denying his motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853. Because the record before us does not conclusively refute Jordan's claim, we reverse and remand for an evidentiary hearing.
In 1994, Jordan was convicted of strong-arm robbery and burglary of an occupied conveyance with an assault or battery. The conviction was affirmed on appeal. See Jordan v. State, 653 So.2d 1040 (Fla. 3d DCA 1995)(table). On August 17, 2005, Jordan, pursuant to Florida Rule of Criminal Procedure 3.853,[1] filed a motion for post-conviction testing of swabs that the State had preserved after trial. In his motion, Jordan argued that the evidence *444 adduced at trial showed that the victim scratched the arms of her assailant during a struggle over the victim's purse. The evidence adduced at trial further showed that the victim's fingernails were analyzed in 1993, but not subjected to DNA testing. Lastly, in his motion, Jordan asserts that DNA testing of the swabs will exonerate him as it will show that he was convicted based on faulty identification by the victim. During trial, Jordan presented a mistaken identity defense.
After the State failed to respond to Jordan's motion, the trial court, on December 5, 2005, granted the motion and ordered that the swabs be tested. The State did not appeal from this order. On April 20, 2006, five months after the trial court ordered the swabs to be tested, the State moved for reconsideration, arguing that fingernail swabs could not exonerate Jordan because "it is impossible to know how many individuals' DNA might be found under the victim's fingernails, nor the circumstances of how their DNA came to be lodged there." In the alternative, the State argued that if the trial court found that post-conviction DNA testing could produce an exculpatory result, Jordan's motion should still be denied as "the swabs in question have been lost, and that their loss does not stem from any bad faith on the part of law enforcement."
On July 5, 2006, a new trial judge granted the State's motion for reconsideration and summarily denied Jordan's Rule 3.853 motion upon a ruling that "given the circumstances of this case, postconviction DNA testing could not produce an exculpatory result." A trial court's summary denial of a Rule 3.853 motion for DNA testing must be reversed, however, unless the post-conviction record conclusively demonstrates that the defendant is not entitled to relief. See Fla. R.App. P. 9.141(b)(2)(D); See Hampton v. State, 924 So.2d 34, 35 (Fla. 3d DCA 2006). Here, the present record does not conclusively refute Jordan's claim. Indeed, the sparse record before this Court provides no basis for the trial court's ruling that DNA testing could not produce an exculpatory result.
Moreover, this appeal is determined by the Court's opinion in Hampton v. State, 924 So.2d 34 (Fla. 3d DCA 2006). In Hampton, the State advanced a similar argument as the one made in this case, namely that the DNA test result would not exonerate the defendant because there were multiple assailants. This Court in Hampton, however, rejected the State's argument as the State had neither introduced scientific evidence before the trial court to support this assertion nor "addressed the question [of] whether, if genetic material from the three assailants is contained in the sample collected from the victim, DNA testing could generate a DNA profile for each of the three assailants. If that is a possibility from a scientific viewpoint, and if three DNA profiles were generated, none of which match the defendant, then such evidence could exonerate the defendant." Id. at 36.
In this case, as in Hampton, if DNA testing could separate out several individual DNA strands on the swabs, none of which match Jordan, that evidence would tend to exonerate Jordan particularly as the victim testified at trial that Jordan was the man she scratched. Id. Absent such scientific evidence on the present record, the trial court must, on remand, conduct an evidentiary hearing to ascertain whether it is scientifically possible to identify an assailant from material swabbed from a victim's fingernails and whether such DNA testing could produce an exculpatory result. In the event that the trial court determines that the answer is no to either of those questions, the trial court must attach the relevant portions of *445 the record to its order and the order must comply with the requirements of Rule 3.853(c)(5), Fla.R.Crim.P. See Carter v. State, 913 So.2d 701, 703 (Fla. 3d DCA 2005).
Lastly, although this issue was not addressed in the trial court's order, we find it necessary to comment on the State's contention that the swabs cannot be located as this issue was raised by the State in its reconsideration motion. An assertion made by the State that evidence is no longer in its possession and cannot be found may not be summarily resolved and requires an evidentiary hearing. See Carter, 913 So.2d at 702; see also Spaziano v. State, 879 So.2d 51, 54 (Fla. 5th DCA 2004); Marsh v. State, 852 So.2d 945, 946 (Fla. 2d DCA 2003). In the event that the trial court finds after conducting an evidentiary hearing that DNA evidence contained in the swabs could provide an exculpatory result, the trial court must conduct an evidentiary hearing on whether the swabs are missing as the State contends. If the swabs are found to be missing, the defendant may then present a claim that the swabs are missing as a result of bad faith. See Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); Williams v. State, 891 So.2d 621, 622 (Fla. 3d DCA 2005).
Accordingly, we reverse the order denying Jordan's motion for DNA testing and remand for further proceedings consistent herewith.
NOTES
[1] Rule 3.853 authorizes DNA testing only where a movant states "how the DNA testing requested by the motion will exonerate the movant of the crime." Fla. R.Crim. P. 3.853(b)(3). Additionally, "[u]nder rule 3.853, a motion for postconviction DNA testing must include, among other things, `a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced.'" Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004). Here, Jordan has presented a facially sufficient motion.