# Supreme Court of Florida

—————

No. SC2023-0721

—————

**PAUL GLEN EVERETT,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

January 11, 2024

PER CURIAM.

Paul Glen Everett, a prisoner under sentence of death, appeals the circuit court's order summarily denying his motion for postconviction DNA testing, which was filed under Florida Rule of Criminal Procedure 3.853. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

## I. BACKGROUND

In 2001, thirty-one-year-old Kelli M. Bailey was found murdered in her home, having suffered numerous injuries, including: a missing tooth; a fractured nose; swelling and

hemorrhaging in her eyes; lacerations to her lips, including one that extended all the way to her cheek; teeth protruding through the top of her lip; bruising on her tongue; cuts, scrapes, and abrasions on her arms, legs, and back; a fracture of her C-5 vertebra; and hemorrhaging in her spinal cord. The cause of death was a broken vertebra in her neck, which paralyzed her and caused her to suffocate to death.

During the investigation, law enforcement discovered that just days before the murder, Everett had purchased at a local Walmart the same model of fish bat as one found near the murder scene. Everett's DNA was eventually matched to vaginal swabs taken from the victim on all thirteen genetic markers. After being presented with an arrest warrant for Bailey's murder on November 27, 2001, Everett admitted that he went out on November 2, 2001, looking for some money and entered the home of Bailey, a stranger to him, uninvited, through an unlocked door. Although he denied knowing that he killed Bailey, he admitted beating her, forcibly raping her, and jerking and twisting her neck during the attack.

Everett was indicted on charges of first-degree murder, burglary of a dwelling with a battery, and sexual battery involving

serious physical force.  He was found guilty as charged and sentenced in 2003 to death for the murder and life imprisonment for the burglary and sexual battery.

We affirmed Everett's convictions and sentences on direct appeal.  *Everett v. State*, 893 So. 2d 1278 (Fla. 2004).  In the years that followed, we also affirmed the denials of his initial and successive motions for postconviction relief.  *Everett v. State*, 54 So. 3d 464 (Fla. 2010); *Everett v. State*, 258 So. 3d 1199 (Fla. 2018).  Everett also sought and was denied federal habeas relief.  *Everett v. Crews*, 5:11cv81/RS, 2014 WL 11350293 (N.D. Fla. Mar. 28, 2014), *aff'd*, 779 F.3d 1212 (11th Cir. 2015).

In 2022, Everett filed a motion for postconviction DNA testing under rule 3.853 and section 925.11, Florida Statutes.  In his motion, Everett sought testing of fifteen items that he claimed would link to the murder scene Jared Farmer, with whom he had been staying in a motel near Bailey's home at the time of the murder.  Most of the items of which Everett sought testing were found at or near the crime scene, but Everett also requested testing of a saliva sample taken from Farmer, Farmer's inked fingerprints, and the shoes Farmer was wearing at the time of his arrest on

November 15, 2001, for lying to law enforcement during a prior sworn interview. Everett asserted that he is innocent and that "[i]f DNA testing shows a match between Farmer and the items . . . , this evidence could result in an acquittal or the jury finding Mr. Everett guilty of a lesser offense."

The circuit court denied the motion, concluding that there was no reasonable probability that the testing Everett sought would produce an acquittal or lesser sentence in light of the overwhelming evidence against him and the minimal value of proving that Farmer's DNA was on the proposed items. This appeal followed.

## II.  ANALYSIS

Section 925.11(1)(a)1., Florida Statutes (2022), provides that a person convicted and sentenced for a felony may seek postconviction DNA testing of evidence collected during the investigation of the crime that would exonerate that person or mitigate the sentence that person received. Florida Rule of Criminal Procedure 3.853 provides the procedures for obtaining such testing. Rule 3.853(b) requires that the motion be under oath and include, *inter alia*, "a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of

the crime for which the movant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime" and "a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received." Fla. R. Crim. P. 3.853(b)(3)-(4). We review the summary denial of the motion de novo, *Gosciminski v. State*, 262 So. 3d 47, 55 (Fla. 2018), and find no error for the following reasons.

First, Everett's motion was insufficiently pleaded. Everett alleged that *if* the testing sought revealed Farmer's DNA on the items, such evidence *could* result in an acquittal or a finding of guilt of a lesser offense. But section 925.11 and rule 3.853 require a movant to plead that "the DNA testing requested" "*will* exonerate the" movant "or *will* mitigate the sentence." § 925.11(2)(a)3., Fla. Stat. (emphasis added); Fla. R. Crim. P. 3.853(b)(3) (emphasis added).

Next, this Court has repeatedly concluded that where a defendant has confessed and the record supplies no substantial basis to doubt the identity of the perpetrator, he cannot show a

reasonable probability of acquittal. *See Hitchcock v. State*, 991 So. 2d 337, 348 (Fla. 2008) ("We agree with the circuit court's finding that Hitchcock has not demonstrated how DNA testing would result in newly discovered evidence likely to produce an acquittal on retrial. DNA analysis of the pubic hairs found on the victim would not exonerate Hitchcock because he admitted having sexual intercourse with her."); *Sireci v. State*, 908 So. 2d 321, 325 (Fla. 2005) (finding no reasonable probability that the defendant would have been acquitted or received a lesser sentence and no error in the denial of postconviction DNA testing where seven witnesses testified that the defendant admitted to them that he killed the victim); *Robinson v. State*, 865 So. 2d 1259, 1265 (Fla. 2004) (stating that identity was not at issue where defendant "stipulated that he shot the victim twice in the head, but claimed that the first shot was accidental and took place after the two engaged in consensual sex").

Everett's admissions to law enforcement on November 27, 2001, that he burglarized Bailey's home, beat her, forcibly raped her, and jerked and twisted her neck during the attack were

admitted at trial. Everett told law enforcement that no one else was present at the time of the murder.

Regarding the November 27, 2001, statement, Everett's counsel stated in closing,

> Number one, it is basically truthful, and you know that it is basically truthful because what is represented in the statement is corroborated by evidence at the scene. We know that to be true. It's also truthful in that you get to hear the voice of Paul Everett, you get to hear the timbre of his voice, you get to hear the emotion that is there, and we all know that when people are making a clean breast of something that they often become emotional. They don't get emotional when they're lying about something, they get emotional when they are fessing up to something. And so there is a patina of truthfulness about the statement. At the same time, even though the statement may be truthful, it is not totally accurate.[1]

Everett's counsel also told the jury,

> This is not premeditated murder. This is not a conscious decision to kill and reflection upon that decision and a carrying out of that decision. It is sexual battery. I mean there's no way that, you know, I can suggest to you otherwise. And what is, anytime a sexual act is committed without the other person's consent, that is sexual battery. But what is important here is that the judge will tell you that sexual battery using serious force, the force has to occur during the process of that. And even though what happened was despicable and

---

1. The inaccuracies in Everett's statement to which counsel referred involved the time of the murder and whether Bailey's lights and TV were on when he entered her home.

outrageous, at the time it was done there was no force being applied at that point.[2] So that at least on that count, that the main charge has not been proven, just like premeditated murder hasn't been proven.

Everett's defense at trial was not that he was innocent or a bystander or that Farmer or anyone else was the killer or a coparticipant. He did not claim that his admissions to law enforcement were false; his attorney, in fact, argued to convince the jury that the admissions were true. Everett's defense was that he killed Bailey during a "bungled burglary" while "high on drugs" and that the murder was not premeditated.[3] Not only was identity not genuinely disputed at Everett's trial, it was conceded.

---

2. The "lack of force" argument was apparently based on the fact that Bailey's neck was already broken at the time of the rape, and she was unable to move below the injury and therefore unable to offer any resistance that Everett would have had to use force to overcome.

3. Lack of premeditation, however, was not a defense to the first-degree murder charge because Everett was charged with both premeditated and felony murder, the jury was instructed on both theories, the jury returned a general guilty verdict on the first-degree murder charge, and this Court found the evidence sufficient to support the first-degree murder conviction under both theories, *Everett,* 893 So. 2d at 1287.

Everett complains that the circuit court provided no rationale for rejecting the claims in his motion that his confession was false and ignoring "significant evidence" of Farmer's involvement in the murder. But these complaints are misplaced. Both section 925.11 and rule 3.853 require that before a defendant is entitled to postconviction DNA testing, he must demonstrate "a reasonable probability that" he "*would have been* acquitted or *would have received* a lesser sentence *if the DNA evidence had been admitted at trial.*" § 925.11(2)(f)3., Fla. Stat. (emphasis added); Fla. R. Crim. P. 3.853(c)(5)(C) (emphasis added). The clear focus of both the statute and the rule is whether the evidence expected to be revealed by the testing sought would have created a reasonable probability of a different outcome if it had been introduced at the defendant's prior trial in addition to the evidence as it was presented in that prior trial. Everett's attempts to pad the record with "evidence" that was not admitted at his trial are improper.

There was no evidence presented at Everett's trial that he falsely confessed or that anyone else was responsible for the murder or present at the scene. Thus, anything relating to those claims— e.g., that Everett's admissions were false, that Farmer was present

- 9 -

at the scene of the murder, that Farmer had threatened Everett into giving a false confession, that Farmer knew details of the murder that only someone present would know—are irrelevant for the purpose of determining whether the DNA testing sought would yield a reasonable probability of an acquittal had it been introduced at his trial. The sole question before this Court today is whether there is a reasonable probability that an objectively reasonable factfinder at Everett's trial would have acquitted him or given a lesser sentence if evidence that Farmer's DNA was on the items of which Everett sought testing had been introduced along with the rest of the evidence as it was presented at his trial. And this question must be answered without consideration of any alleged "evidence" that was not introduced at the trial.

We also agree with the circuit court that there is no reasonable probability that the postconviction DNA testing sought would mitigate Everett's sentence. "[A] movant . . . must lay out with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence." *Hitchcock v. State*, 866 So. 2d 23, 27 (Fla. 2004). This, Everett failed to do. Even assuming that the DNA testing sought

could somehow have established that Farmer was present during and participated in the murder, there is still no reasonable probability that Everett would have received a lesser sentence. Farmer's involvement in the murder would not have mitigated Everett's involvement, especially in light of Everett's admissions—which were consistent with the other evidence presented at trial—that he beat and raped Bailey and jerked and twisted her neck during the attack, which was shown to have caused her death.

Everett also asserted that if Farmer's DNA had been found at the scene, the State would have also charged Farmer with Bailey's murder, which would have resulted in Everett's jury receiving the independent act jury instruction and entitled Everett to additional constitutional scrutiny of his involvement before he could be sentenced to death. But these claims are based on speculation of the course of action the State may have taken had Farmer's DNA been found at the murder scene, and speculative claims cannot form the basis of granting a motion for postconviction DNA testing. *Id.* at 26.

## III. CONCLUSION

Because Everett's motion for postconviction DNA testing did not establish a reasonable probability that Everett would have been acquitted or received a lesser sentence if the presence of DNA at the scene of the murder matching Jared Farmer had been admitted at his trial, we affirm the circuit court's summary denial.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Bay County,
    Brantley S. Clark, Jr., Judge
    Case No. 032001CF002956XXAXMX

Robert Friedman, Capital Collateral Regional Counsel, and Alice B. Copek, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant

Ashley Moody, Attorney General, and Jason W. Rodriguez, Assistant Attorney General, Tallahassee, Florida,

    for Appellee